UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

**Hon. Hugh B. Scott**

v.

06CR236A

**Report
&
Recommendation**

EZZAT M. SOLIMAN,

Defendant.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 7).   The instant matter before the Court is a series of defense motions seeking

various relief.  Originally, defendant filed an omnibus motion seeking this relief (Docket No. 23),

but the Court directed that defendant refile the motions as separate motions rather than file an

oversize omnibus motion (Docket No. 26; see Docket No. 25).   Then, defendant filed four

motions (Docket No. 27 (motion I, for dismissal for facial insufficiency), 29 (motion II, dismissal

for constitutional defects), 31 (motion III, for discovery, particularization, and removal of

surplusage), 33 (motion IV, for suppression of evidence)).  Due to errors in the affidavits,

defendant filed corrected motions and attorney's affirmations and the Court terminated the first

set of motions.  The following motions are the ones pending before the Court:  Docket No. 36

(for dismissal for facial insufficiency, motion I), 37 (dismissal for constitutional defects, motion

II), 38 (for discovery, particularization, and removal of surplusage, motions III), 39 (for

suppression of evidence, motion IV)).  Hereinafter, the Court will refer to the corrected versions of the motions.

The Court determined to consider first motion I (Docket No. 36), the motion to dismiss for facial insufficiency, and motion III (Docket No. 38), the motions for discovery and other relief, and issued a briefing schedule for those motions (Docket No. 35).  Responses to those motions were due on or before December 28, 2007, with any reply, due on or before January 18, 2008, and oral argument of these motions held on January 24, 2008, (Docket Nos. 35, 45 (minutes)).  This motion was deemed submitted on March 11, 2008, when additional materials were submitted by defendant on motion III for discovery.  If necessary, the Court will set the briefing schedule for the remaining motions (Docket Nos. 37, 39) upon disposition of the present motions.

This Report & Recommendation considers defendant's first motion to dismiss for facial insufficiency (Docket No. 36, <u>see</u> Docket No. 27[1]), motion I.  Separately (and if necessary), the Court will issue an Order considering motion III for discovery, particularization, and to strike surplusage (Docket No. 38, <u>see</u> Docket No. 31).

## BACKGROUND

Defendant was indicted on a sixty-four count Indictment for health care fraud, in violation of 18 U.S.C. §§ 1347 and 2 (Docket No. 1, Indictment).  There, the Government alleges that from 2001 until February 2004, defendant knowingly and willfully executed and attempted to

---

[1]In support of this motion, defendant filed the motion, Docket Nos. 36, 27; attorney's affirmation (formerly an affidavit, Docket No. 27), Docket No. 36; defendant's memorandum of law, Docket No. 28; defendant's reply memorandum, Docket No. 42; and defendant's supplemental letter brief, Docket No. 44.

In opposition, the Government filed its Response, with exhibits, Docket No. 40.

execute a scheme to defraud the Medicare Health Care Benefits Programs ("Programs") by "up-coding" clinical services rendered by defendant by claiming services that were reimbursable at a higher rate were performed rather than the actual, appropriate service provided (id. ¶¶ 1, 2, 6, 11, 28).  Defendant is a physician who practiced in Warsaw, New York, as a sole proprietor and operator (id. ¶¶ 3, 5).  The Government alleges that defendant used Physicians' Current Procedural Terminology ("CPT") codes for the highest reimbursement rate for services rendered by changing the final digit of the five-digit codes (id. ¶¶ 20-21, 22-22[2], 23).  Defendant allegedly caused false statements and misrepresentations of fact to be made to Programs and failed to use proper medical and billing judgment to allow billing for the highest code (id. ¶¶ 24-25), and for billing for non-rendered clinical services to receive more money than for actual services rendered (id. ¶ 26).  The Government contends that defendant reviewed office-based claims prior to submission to the Programs (id. ¶ 27).  Each count of the Indictment is a particular claim for a specific date where the CPT codes are for the highest level (id. at pages 11-13, Table of Counts).  The Government also seeks forfeiture of over $81,000 in proceeds from the alleged fraud to be executed upon defendant's cash or defendant's Warsaw office, real property defendant owns in several locations (in Silver Springs, New York; Warsaw, New York; Shippenburg, Pennsylvania; Palm Beach, Florida), and a 2003 Lexus registered to defendant (id. at pages 13-16).

Defendant was arraigned and pled not guilty (Docket No. 6).

---

[2]The Indictment has two paragraph 22s, both discussing the established patient evaluation & management codes.

*Defendant's Motion to Dismiss for Facial Insufficiency*

Defendant argues that the Indictment is muliplicitous with a single unified scheme to defraud alleged in 64 counts associated with individual events in furtherance of the scheme (Docket No. 27, Motion ¶ 1).  The Indictment either charges a single scheme, with 64 examples or 64 separate offenses, "in effect 64 separate 'schemes'" (Docket No. 28, Def. Memo. at 1).  He argues that Federal Rule of Criminal Procedure 7 requires pleading of independent counts and one count cannot be tested because of the absence of boundaries between the counts (Docket No. 27, Motion ¶ 2).  Next, defendant argues that the statute he allegedly violated, 18 U.S.C. § 1347, is facially unconstitutional because it fails to include the jurisdictional element of "commerce . . . among the several States," U.S. Const. Art. I, § 8, cl. 3, and the Indictment nowhere alleges any effect of the scheme alleged upon interstate commerce (id. ¶¶ 3, 4).  Defendant also claims that the Indictment fails to allege essential elements of any false statements or misrepresentations was material (id. ¶ 5).  Finally, defendant argues that, if the Indictment is read to include 64 counts, each of these counts fails to state the essential facts constituting the offense (id. ¶ 6).

The Government responds that the Indictment sufficiently alleged the offense of health care fraud and that the underlying statute is constitutional and the allegation sufficiently states the jurisdictional element for the offense (see generally Docket No. 40, Gov't Response).  The Government cites the legislative history for 18 U.S.C. § 1347 where the House Committee on Government Reform and Oversight noted that "[h]ealth care fraud, by some estimates a $100 billion problem, does not stay within jurisdictional boundaries that divide Federal, State and local health care finance and law enforcement" (id. at 2, Ex. A, quoting Health Care Fraud:

4

All Public and Private Payers Need Federal Criminal Anti-Fraud Protections, House Report

No. 104-747, at 3 (Aug. 2, 1996)).  Further, implicit in § 1347 is the definition of a "health care

benefit program" of 18 U.S.C. § 24(b), which states that a health care benefit program is defined

as "any public or private plan or contract, affecting commerce, under which any medical benefit,

item, or service is provided to any individual, and includes any individual or entity who is

providing a medical benefit, item, or service for which payment may be made under the plan or

contract," 18 U.S.C. § 24(b) (see Docket No. 40, Gov't Response at 4).  Paragraph 11 of the

Indictment charges that the Programs defendant allegedly defrauded were all "'Health Care

Benefit Programs' as defined in Title 18, United States Code, Section 24(b)."  (Docket No. 1,

Indictment ¶ 11; Docket No. 40, Gov't Response at 5.)  As for defendant's multiplicity argument,

the Government contends that each of the sixty-four claims submitted constitute distinct

offenses, see United States v. Cooper, 283 F. Supp. 2d 1215, 1231 (D. Kan. 2003) (Docket

No. 40, Gov't Response at 9).  As for the elements of the offense, the Government concludes that

the Indictment "sets forth a plain, concise and definite written statement of the essential facts for

each of the 64 separate executions of the scheme to defraud Medicare, Excellus and Univera as

perpetrated by Dr. Soliman" (id. at 11).

Defendant contends that the definition within § 24(b) is not enough to remedy § 1347's

statutory defect in not expressly citing interstate commerce authorization (Docket No. 28, Def.

Memo. at 5).  He faults § 24(b) itself for not expressly mentioning interstate or foreign commerce

(id.).

**DISCUSSION**

I.      Dismissal for Facial Insufficiency–Standard

To comport with Federal Rules of Criminal Procedure and constitutional requirements, an Indictment must contain all elements of the offense so as to fairly inform the defendant of the charges against him and enable the defendant to plead double jeopardy in defense of future prosecutions for the same offense, see Hamling v. United States, 418 U.S. 87, 117 (1974) (Docket No. 40, Gov't Response at 7-8).  Generally, recital of the words of the criminal statute itself is sufficient so long as those words "'set forth all the elements necessary to constitute the offense intended to be punished,'" Hamling, supra, 418 U.S. at 117 (internal quotation omitted). (Id. at 8).

A.      Facial Unconstitutionality

Acts of Congress are entitled to a "presumption of constitutionality," United States v. Morrison, 529 U.S. 598, 607 (2000), with this presumption overcome only upon a "plain showing that Congress has exceeded its constitutional bounds," id. (Docket No. 40, Gov't Response at 1).  Judicial review of the power of Congress to enact legislation under the Commerce Clause, as the Government claims is applicable here, is narrow and deferential, see Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc., 452 U.S. 264, 276 (1981).   (Id.) This inquiry is whether there is a rational basis by Congress for reaching the conclusion that the legislation affects interstate commerce and whether the congressional means of addressing the interstate activity are "reasonably adapted to the end permitted by the Constitution," Hodel, supra, 452 U.S. at 276.  (Id. at 1-2).

6

Section 1347 was added in 1996 as part of criminal enforcement provisions of the Health

Insurance Portability and Accountability Act ("HIPAA") to "combat waste, fraud, and abuse in

health insurance and health care delivery," Pub. L. No. 104-191.  That section states

> "Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--
>  "(1) to defraud any health care benefit program; or
>   "(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
> "in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.  If the violation results in serious bodily injury (as defined in section 1365 of this title), such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both."

18 U.S.C. § 1347.

As a "Federal health care offense," see 18 U.S.C. § 24(a)(1), a "health care benefit

program" under § 1347 is defined in 18 U.S.C. § 24(b) to mean "any public or private plan or

contract, affecting commerce, under which any medical benefit, item, or service is provided to

any individual, and includes any individual or entity who is providing a medical benefit, item, or

service for which payment may be made under the plan or contract" (emphasis added).

B.      Multiplicity

An Indictment is muliplicitous if it "charges a single offense in more than one count,"

United States v. Maldonado-Rivera, 922 F.2d 934, 969 (2d Cir. 1990), cert. denied, 501 U.S.

1233 (1991).

7

C.      Failure to Allege False Statement

The failure to allege all the elements of an offense is fatal to the Indictment, <u>see</u> <u>Russell v.</u>
<u>United States</u>, 369 U.S. 749 (1962).

II.     Application

A.      Facial Unconstitutionality of the Indictment

This Report & Recommendation deals with the claim that the Indictment is facially
insufficient because of the unconstitutionality of the statute for the underlying offense.  There is
some obvious overlap with the substantive argument of the unconstitutionality of that act, which
defendant raises in motion II (Docket No. 37) and (if necessary) will be considered separately.

1.      The Indictment

a.      Commerce Power and Its Limits

The Commerce Clause states that Congress has the power "to regulate Commerce with
foreign Nations, and among the several States, and with the Indian Tribes," U.S. Const. art. I, § 8,
cl. 3.  The <u>Morrison</u> Court noted that "even under our modern, expansive interpretation of the
Commerce Clause, Congress' regulatory authority is not without effective bounds," <u>United States</u>
<u>v. Morrison</u>, 529 U.S. 598, 608 (2000); <u>see</u> <u>United States v. Lopez</u>, 514 U.S. 549, 557 (1995).  In
1995, the Supreme Court construed the scope of this commerce power in <u>United States v. Lopez</u>,
514 U.S. 549 (1995), holding that provision within the Gun-Free School Zones Act making
possession of a firearm near a school a federal offense under the Commerce Clause exceeded
Congress's power to regulate interstate or foreign commerce.  One infirmity with the firearm
statute at issue there (18 U.S.C. § 922(q)) was that it lacked a jurisdictional element "which
would ensure, through case-by-case inquiry, that the firearm possession in question affects

interstate commerce," 514 U.S. at 561; see also id. (noting that the criminal statute at issue "ha[d] nothing to do with 'commerce' or any sort of economic enterprise"); Morrison, supra, 529 U.S. at 611-12.  The Government in Lopez also conceded that the text and the legislative history for § 922(q) did not contain "express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone," Lopez, supra, 514 U.S. at 562 (internal quotation from the Government's brief omitted).  Also the link between weapon possession and a substantial effect upon interstate commerce was found to be attenuated, id. at 563-67; Morrison, supra, 529 U.S. at 612.

Applying the standard set forth in Lopez, the Morrison Court held gender-motivated crimes of violence are not economic activity and the Violence Against Women Act, 42 U.S.C. § 13981, lacked a jurisdictional elements that would sufficiently tie that offense to interstate commerce, Morrison, supra, 529 U.S. at 613, although its legislative history indicated findings regarding the impact of gender-based violence on the victims and their families, id. at 614. Congress cited as authority to enact that act was Article I, Section 8 (without specifying the clause under that article) and its affirmative powers under section 5 of the Fourteenth Amendment, id. at 607, with the Government arguing that it was enacted under the Commerce Clause, id.  "[S]imply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so," Lopez, supra, 514 U.S. at 557 n.2 (quoting Hodel v. Virginia Surface Mining & Reclamation Assn., Inc., 482 U.S. 264, 311 (1981); quoted in Morrison, supra, 529 U.S. at 614.  The Court in both Lopez and Morrison concluded that the activity Congress sought to make federal crimes were non-economic.

b.      18 U.S.C. § 1347

In 1996, Congress enacted 18 U.S.C. § 1347.  Unlike the Gun-Free School Zones Act

challenged in Lopez, the legislative history for HIPAA and its anti-health care fraud provisions

did have language about the interstate commerce affects of health care fraud (see at page 4

supra).  And unlike the Violence Against Woman Act in Morrison and the Gun-Free School

Zones Act, the anti-fraud provisions in HIPAA arguably address an economic activity, see United

States v. Whited, 311 F.3d 259, 268 (3d Cir. 2002), cert. denied, 538 U.S. 1065 (2003).

Defendant contends that 18 U.S.C. § 1347 is facially unconstitutional, since it does not

assert the federal jurisdictional basis for the offense, namely the activity occurring within

interstate commerce.  Furthermore, this Indictment failed to allege any interstate commerce

activity to warrant federal jurisdiction.  (Docket No. 28, Def. Memo. at 4-6.)  Defendant argues

that reliance upon § 24(b) is unavailing since "affecting commerce" within that provision does

not distinguish intrastate from interstate or foreign commerce (id. at 5).  Defendant also raises

this contention generally in his second motion to dismiss (Docket No. 37).

Courts have upheld HIPAA's fraud provisions as constitutionally valid exercises of the

commerce power.  United States v. Lauersen, No. 98 CR 113, 1999 WL 637237, at *5-7

(S.D.N.Y. Aug. 20, 1999) (see also Docket No. 40, Gov't Response at 6, Ex. C); Whited, supra,

311 F.3d at 268; see Deborah F. Buckman, Validity, Construction, and Application of Health

Insurance Portability and Accountability Act of 1996 (HIPAA) and Regulations Promulgated

Thereunder, 194 A.L.R. Fed. 133, § 3 (2004).  Those courts have upheld these provisions

because they essentially found that Congress was using a shorthand when referring to "affect[ing]

commerce" without including express mention of interstate or international commerce and

concluded that this does not render that statue beyond Congress's commerce power.  Lauersen, supra, 1999 WL 637237, at *7 n.3; Whited, supra, 311 F.3d at 268 (quoting Jones v. United States, 529 U.S. 848, 854 (2000), on use of "affecting commerce" and congressional intent to invoke full Commerce Clause authority); see United States v. Gillies, 851 F.2d 492, 493 (1st Cir.) (Breyer, J.) ("the words 'affecting commerce' are jurisdictional words of art, typically signaling a congressional intent to exercise its Commerce Clause power broadly, perhaps as far as the Constitution permits"), cert. denied, 488 U.S. 857 (1988) (see Docket No. 40, Gov't Response at 4).  One court, however, rejected a health care fraud Indictment which merely cited to § 24(b), holding that "affecting commerce" is a jurisdictional element of an offense under § 1347 and that this Indictment needed to allege the existence of this jurisdictional element but failed to do so, United States v. Young Moon, No. 2:04-00014, Docket No. 57 (M.D. Tenn. Nov. 23, 2004) (Docket No. 28, Def. Memo. at 8, Ex.); but cf. United States v. Brock, No. 2:06-CR-73, 2007 WL 540790, at *2, 3-4 (E.D. Tenn. Feb. 15, 2007) (Shirley, Mag. J.) (noting that the Government in Young Moon cured the problem by filing a superceding Indictment adding the "affecting commerce" language, and quoting earlier Report that rejected reliance upon Young Moon), adopted, 2007 WL 540790, at *1 (Docket No. 40, Gov't Response, Ex. B).

    c.    Application to Soliman's Indictment

The Indictment here does not refer to interstate or foreign commerce to allege the jurisdictional element for the offenses charged.  The Government cites to paragraphs 1, 2, 10, and 11 of the Indictment as stating the jurisdictional bases under 18 U.S.C. §§ 24(b) and 1347 (Docket No. 40, Gov't Response at 4-5).  Paragraphs 1 and 2 generally allege the fraud scheme and the means defendant used to advance that scheme.  After outlining the Medicare program

(Docket No. 1, Indictment ¶¶ 6-9), paragraph 10 identifies Univera and Excellus as "private insurance companies doing business in the Western District of New York," (id. ¶ 10), without anything more.  This statement may establish venue in this District but is not sufficient to allege interstate commerce or affecting interstate commerce for this Court's jurisdiction.  The Indictment does not, for example, state where these corporations are incorporated or have their principal places of business or the scope of their business activities outside of this state or within the stream of interstate commerce.  In short, it is unknown whether Univera or Excellus affect interstate commerce.  Paragraph 11 of the Indictment here refers to § 24(b) defined concept of "health care benefit program" as "affecting commerce" but does not use that phrase itself.  There are no other allegations of jurisdiction; in describing the alleged scheme in the rest of the Indictment, it does not allege any activities that occurred outside of this District or affect entities (save Medicare) outside of this state.

Although § 1347 does not expressly refer to the jurisdictional element of interstate commerce power, that element is incorporated by reference to § 24(b) and its reference to "health care benefit programs" as "affecting commerce," see Brock, supra 2007 WL 540790, at *2-3(§ 24(b) reference is constitutional and procedurally sufficient) (Docket No. 40, Gov't Response, Ex. B); see Whited, supra, 311 F.3d at 262.  The district court in Brock did not consider the interstate commerce aspect of the "affecting commerce" language of § 24(b).

The United States District Court for the Southern District of New York, in Lauersen, however did consider the omission of "interstate or foreign commerce" from "affecting commerce" in § 24(b) (and, by implication in § 1347).  Considering the constitutionality of the statute (and not the sufficiency of pleading as raised in the present motion, cf. Brock, supra,

2007 WL 540790, at *1), the district court in <u>Lauersen</u>, <u>supra</u>, 1999 WL 637237, at *5, held that

§ 1347 contains a "jurisdictional element that ensures, on a case-by-case basis, that the prohibited

act affects interstate commerce" that passed constitutional muster.  The court distinguished

18 U.S.C. § 922(q) (held to be constitutionally infirm in <u>Lopez</u>, 514 U.S. 549) and <u>Lopez</u> itself,

finding that § 1347 did not require "accretion of 'inference upon inference,'" <u>Lauersen</u>, <u>supra</u>,

1999 WL 637237, at *6 (quoting <u>Lopez</u>, <u>supra</u>, 514 U.S. at 567) faulted in the analysis justifying

§ 922(q).

  The problem with incorporation of § 24(b) into § 1347 is that neither provision defines

"affecting commerce" to include interstate and foreign commerce.  These provisions were

enacted one year after the Supreme Court decided <u>Lopez</u>, hence Congress was aware of the need

to specify the source of congressional authority to legislate (in particular commerce power, if

Congress was using that power to enact these provisions).  Congress, in other criminal statutes,

was aware of the distinction between interstate commerce (for example) and affecting commerce,

<u>e.g.</u>, 18 U.S.C. §§ 10 (defining "interstate commerce" and "foreign commerce"), 922(g) (firearms

statute, unlawful for convict to "ship or transport in interstate or foreign commerce, or possess in

or affecting commerce, any firearm").

  The First Circuit, in <u>Gillies</u>, held that "affecting commerce" was a term of art that

Congress uses to incorporate the fullest extent of its commerce power, 851 F.2d at 493, but that

case involved 18 U.S.C. § 922(g) where Congress used interstate commerce, foreign commerce

and "affecting commerce" in the same provision, <u>id.</u> at 493.  The cases cited in <u>Gillies</u> for the

term of art proposition each in turn referred somewhere to interstate or foreign commerce with

"affecting commerce" being used as a shorthand, <u>see id.</u> at 493-94 (citing <u>Heart of Atlanta Motel</u>

13

v. United States, 379 U.S. 241, 258, 247 (1964) (Title II of Civil Rights Act of 1964 defined

affects commerce to include transients in hotels, and interstate travelers in restaurants), National

Labor Relations Bd. v. Fainblatt, 306 U.S. 601, 606-07 (1939) ("affecting commerce" in

29 U.S.C. § 152(7), where "commerce" is defined in § 152(6) as including interstate and foreign

commerce)).  The court also noted other statutes that use the phrase "affecting commerce," id.

(citing 15 U.S.C. §§ 78l(g)(1) (securities regulation), 2006(c)(1) (1982) (automobile labeling),

repealed, Pub. L. No. 103-272 (1994) (see 49 U.S.C. § 32908(e), in or affecting commerce under

the Federal Trade Commission Act, 15 U.S.C. §§ 41- et seq.); 17 U.S.C. § 910(a) (copyright

enforcement); 42 U.S.C. §§ 6303(c), 6325(d) (energy conservation); 49 U.S.C.App. § 2503(3)[3]

(Supp. II 1984) (motor carrier safety), revised as 49 U.S.C. § 31132(3)), with many of them

referring to the definitions within the Federal Trade Commission Act, 15 U.S.C. §§ 44

(commerce defined as interstate and foreign commerce), 45, for "affecting commerce".  The

court in Gillies focused on the scope of "affecting commerce," see 851 F.2d at 493 (discussing

Federal Trade Commission Act amendment and amendments to the Clayton Act, 15 U.S.C. § 18,

to change statute to broader "affecting commerce").  See also Jones v. U.S., supra, 529 U.S. at

853 (construing 18 U.S.C. § 844(i), destroying by fire any property in interstate or foreign

commerce or "in any activity affecting interstate or foreign commerce"); cf. Whited, supra,

311 F.3d at 268 (using ellipse to remove references to interstate or foreign commerce in

§ 844(i)).  The Gillies court did not focus upon whether the affected "commerce" implied

---

[3]Section 2503(3) defined "employer" as "any person engaged in a business affecting interstate commerce," with § 2503(4) defining "interstate commerce," including international transportation, while § 2503(5) defines "intrastate commerce."  See also 49 U.S.C. § 31132(3), (4), (5).

14

interstate and foreign commerce.  In the statutory or case law instances cited there, "commerce" was defined as interstate or foreign commerce or distinguished from intrastate commerce, transactions within congressional reach under the Commerce Clause.

In <u>Lauersen</u>, the district court found that defendants there did not dispute that the insurers alleged to have been defrauded, Empire Blue Cross/Blue Shield and Oxford Health Plans, were "involved in interstate commerce," 1999 WL 637237, at *6.  The Indictment there alleged facts pointing to interstate commerce or affecting such commerce even if the underlying statutes did not expressly define "commerce" to be interstate or foreign; <u>cf. Whited</u>, <u>supra</u>, 311 F.3d at 264-65 (upholding finding by district court of interstate nature of contractual arrangement alleged in health care fraud case).

Unlike the statutes cited above and by the <u>Gillies</u> court, 18 U.S.C. § 24(b) (and by implication § 1347) does not define the "commerce" that is affected by health care benefit programs.  That "commerce" may include (possibly as here with private insurers Univera and Excellus) intrastate commerce.  The Indictment here does not allege facts that the Court could presume allege interstate or international commerce to overcome the textual omission from 18 U.S.C. §§ 24(b) and 1347.  This Indictment does not allege "the jurisdictional element that ensures, on a case-by-case basis, that the prohibited act affects interstate commerce," <u>Lopez</u>, <u>supra</u>, 514 U.S. at 561; <u>cf. Lauersen</u>, <u>supra</u>, 1999 WL 637237, at *5.  Unlike in <u>Lauersen</u>, <u>supra</u>, 1999 WL 637237, at *6, or <u>Whited</u>, <u>supra</u>, 311 F.3d at 264-65, there is no allegation of the interstate nature of the private insurers' activities; at best, the only interstate actor alleged is Medicare and its program administrator (<u>see</u> Docket No. 1, Indictment ¶ 7), without that being expressly alleged.  As a result, this Court recommends **rejecting** the holding in <u>Lauersen</u>, <u>supra</u>,

15

1999 WL 637237, at *7 & n.3, and its reliance on <u>Gillies</u> to find that "affecting commerce" of § 24(b) (and by extension § 1347) implies interstate and foreign commerce to be constitutional under the Commerce Clause.  The Government here needed to allege more to show the interstate or international nature of these transactions to justify federal jurisdiction over what would otherwise be a local criminal matter (alleged defrauding of health insurers).

For pleading purposes, and without prejudice to defendant's more substantive motion on this point (Docket No. 37), defendant's present motion to dismiss for facial insufficiency on constitutional grounds should be **granted** because the Indictment fails to sufficiently allege a basis of federal jurisdiction.

The Government, as one possible response to this Report, might argue that the 32 counts alleging fraud against Medicare[4] should stand on interstate commerce grounds despite the recommendation as to the other 32 counts alleging fraud against the private insurers, given that the administration of Medicare is done by the United States Department of Health and Human Services based in Washington, DC.  But the defect in failing to allege any basis for federal jurisdiction (here interstate commerce) in the offense statute, its definition provision (18 U.S.C. § 24(b)) or in the facts alleged in the Indictment itself precludes this Court from recommending parsing the counts to uphold portions of this Indictment.  Also, as indicated below discussing

---

[4]Arguably, Congress could regulate fraud against Medicare under its spending power, <u>see</u> U.S. Const. art. I, § 8, cls. 1, 18, <u>see also</u> <u>United States v. Butler</u>, 297 U.S. 1 (1936); <u>United States v. Edgar</u>, 304 F.3d 1320, 1324-27 (11th Cir. 2002) (upholding conviction for theft from organization receiving federal funds, 18 U.S.C. § 666, here misappropriation of Medicare funds, under spending power and Necessary and Proper Clause), but no one has argued that or cited either in the text of § 1347 or its legislative history that this provision was based upon that power.

multiplicity and failure to allege essential facts, such parsing of the counts is problematic on those grounds as well.

      2.      Defense Motion II to Dismiss and this Motion

Up to this point, the Court has not addressed the underlying issues raised above about the reliance upon "affecting commerce" where "commerce" is not specified in § 24(b) (or mentioned at all in § 1347). The focus here has been upon what the Government alleged (or, more pertinently, failed to allege) in this Indictment relative to federal jurisdiction. The next logical step might be to consider the constitutionality of 18 U.S.C. § 1347 itself, rather than just merely what was alleged in this Indictment. Defendant's motion II (Docket No. 37) in fact addresses this point. To some extent, the parties have briefed this issue (Docket Nos. 30, 37 (defense); see Docket No. 40 (Government response, in part addressing constitutionality of the act); see also Docket No. 42, Defense Reply Memo. at 3-5) but it has not been argued distinct from the facial deficiencies in the Indictment. Given the adjudicative preference to avoid resolving a constitutional issue when other grounds can be reached, see Ashwander v. TVA, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented on the record, if there is also present some other ground upon which the case may be disposed of"); Nestor v. Pratt & Whitney, 466 F.3d 65, 71 (2d Cir. 2006) (quoting Ashwander, supra, 297 U.S. at 347 (Brandeis, J., concurring,), "[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter"); Allstate Ins. Co. v. Serio, 261 F.3d 143, 149-50 (2d Cir. 2001) ("It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions"), the presumption of

constitutionality of federal statutes, see Morrison, supra, 529 U.S. at 607, and the current state of argument and the record on this constitutional point before the Court, the better route here would be to await action on the pending motion and on this Report before deciding the larger constitutional question.

If the Report & Recommendation is challenged and it is adopted and the Government wishes to charge defendant again and if certain counts now alleged are not time barred, the Government could attempt to indict defendant again and defendant then could challenge the constitutionality of § 1347 on the basis of this new Indictment.  The nature of this new Indictment obviously will frame the constitutional issue.  If, on the other hand, this Report & Recommendation is rejected and this case survives, then defendant can contest the constitutionality of § 1347 in his pending motion II as distinct from the manner the Government alleged violation of that statute in the present Indictment and the Court would set a full briefing and argument schedule for that second motion.

B.     Other Grounds

Defendant raised other bases for rejecting this Indictment on its face.

1.     Multiplicity

The Indictment alleges a single scheme, played out over 26 patient accounts and allegedly committed 64 times (Docket No. 28, Def. Memo. at 1), but alleged in the Indictment as 64 individual counts.  Defendant argues that this is contradictory (id.).  The Indictment is muliplicitous if it "charges a single offense in more than one count," United States v. Maldonado-Rivera, 922 F.2d 934, 969 (2d Cir. 1990), cert. denied, 501 U.S. 1233 (1991) (id. at 2).  The Government did not respond to this contention (cf. Docket No. 42, Def. Reply Memo. at

1-2).  In further reply, defendant argues that <u>United States v. Hickman</u>, 331 F.3d 439, 445-46,

446 n.7 (5th Cir. 2003), supports his contention (Docket No. 44, Def. Reply letter, at 1-2).

Given the recommendation on facial constitutionality, the Court need not address this

contention.  But as an alternative ground, the Indictment should be **dismissed** as being

muliplicitous.  The Government should have either indicted defendant for a single scheme, with

up to 64 instances of its implementation, or charged 64 separate instances of health care fraud,

and not both as alleged here.  For example, both counts 31 and 32 (as well as count 30) allege

fraud as to the same Medicare patient account number but on different dates.  If ultimately tried

but the jury finds that the Government proved its case as to count 32 but not as to count 31,

should defendant be acquitted just as to count 31 or upon the entire Indictment (since each count

refers to the background allegations for the upcoding scheme)?  In part this question depends

upon the admissible evidence presented to the jury (whether the jury reject the scheme as a whole

or just the allegation as to the one particular billing in a given count) but the framework of this

Indictment presents this ultimate dilemma.

2.    Failure to Allege False Statement

Defendant argues that § 1347 has as elements proof of a misrepresentation or

concealment of a material fact (Docket No. 28, Def. Memo. at 6-7, <u>citing</u> <u>Neder v. United States</u>,

527 U.S. 1 (1999) (holding that 18 U.S.C. § 1344(1) bank fraud incorporates common law

element of proof of a scheme or artifice to defraud)).  In addition to not alleging any effect on

interstate or foreign commerce discussed above, defendant contends that the Indictment fails to

allege any false statements or misrepresentations (<u>id.</u> at 8).  The Government responds that the

Indictment met minimum pleading requirements to allege materiality of defendant's alleged

19

fraudulent conduct through the statement that fraud resulted in false payment of health care benefits being made (Docket No. 40, Gov't Response at 11; cf. Docket No. 1, Indictment ¶ 1).

The apparent material false statements were the alleged coding of services to a higher priced service than was actually rendered to the patients (see Docket No. 1, Indictment ¶¶ 2, 23-28, 12-22 (claim form and coding procedures explained)). Thus, if this Indictment somehow survives the recommendation made above regarding the jurisdictional allegation, it has alleged material false statements and defendant's motion to dismiss on this ground should be **denied**.

3. Failure of Each Count to Allege Essential Facts

Defendant cites to Eleventh Circuit cases which held that district courts had the discretion to dismiss an Indictment if it fails to allege facts which constitute a prosecutable offense (Docket No. 28, Def. Memo. at 8, citing United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983), cert. denied, 466 U.S. 973 (1984); United States v. Cure, 804 F.2d 625, 627 (11th Cir. 1986)). He objects to the Government incorporating counts by reference and "commingling" of counts into "a soup of undifferentiated factual and accusatory allegations" by labeling them as distinct counts (Docket No. 36, Def. Atty. Affirm. ¶ 20; Docket No. 27, Def. Memo. at 8-9).

Defendant's argument here is a variant of the earlier argument on multiplicity of charges, here contending that the Government cannot incorporate counts by reference and that each count must stand on its own (Docket No. 28, Def. Memo. at 8-10; see Docket No. 42, Def. Reply Memo. at 6). The Government views this case as a scheme to defraud perpetrated 64 times (see Docket No. 40, Gov't Response at 6, 11). Given the alternative disposition recommended on multiplicity, the Indictment also should be **dismissed** for failure to allege essential facts.

III.     Briefing Schedule

Given the recommended disposition (that this Indictment be dismissed), the Court at this time need not consider the other motions filed by defendant, including the briefed and argued motions for discovery, particularization, and removal of surplusage (Docket No. 38).  But objections to this Report are expected.  If this Report is rejected and the case returned here, the Court will next rule on the discovery and other relief motions (motion III) and schedule briefing for the remaining motions (motions II and IV).

<b>CONCLUSION</b>

Based upon the above, it is recommended that defendant's motion I to dismiss the Indictment for facial insufficiency (Docket No. 36) be **granted** on the jurisdictional ground of facial unconstitutionality of the Indictment or (alternatively) for multiplicity of counts and failure to allege essential facts, but should not be dismissed for failure to allege essential elements (with regard to misrepresentations of material facts).


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
March 18, 2008