UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                    DECISION AND ORDER
                    v.                                    06-CR-236A

EZZAT M. SOLIMAN,

                                        Defendant.

## BACKGROUND

         The defendant, Ezzat M. Soliman, is a physician practicing medicine in the

Western District of New York.  On August 2, 2006, the defendant was charged in a 64-

count Indictment with engaging in a scheme to defraud health care benefit programs in

violation of 18 U.S.C. § 1347.  The matter was referred to Magistrate Judge Hugh B.

Scott for pretrial proceedings.

         The defendant filed a motion to dismiss the Indictment on the grounds that:

(1) the Indictment is facially insufficient; (2) the Indictment is multiplicitous; and (3) the

statute at issue exceeds Congress' authority under the Commerce Clause.  The

government opposes those motions and on March 18, 2008, Magistrate Judge Scott

recommended that the motions to dismiss be granted.

         The government filed objections and the defendant filed a response.  On

May 30, 2008, the Court heard argument on the objections.

         For the reasons stated, the Court finds that: (1) the Indictment sufficiently

alleges violations of 18 U.S.C. § 1347; (2) the Indictment is not multiplicitous; and (3) the

1

statute is a constitutionally valid exercise of Congressional authority under the Commerce Clause.

**DISCUSSION**

**1.    Validity of the Indictment**

Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged."  Id. This rule satisfies a defendant's Sixth Amendment right to be informed of the nature and cause of the accusation; prevents a defendant from being subject to double jeopardy; and serves the Fifth Amendment's protection against prosecutions for crimes based on evidence not presented to a grand jury.  See United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999).

"It is well-established that '[a]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events.'"  Id. (quoting United States v.  Stavroulakis, 952 F.2d 686, 693 (2d Cir.), cert. denied, 504 U.S. 926 (1992)).  The Second Circuit has "consistently upheld indictments that do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Id.  (internal quotation omitted).  As the Supreme Court recently reiterated, an indictment has "two constitutional requirements: 'first, [it must] contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and, second,

[it must] enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Resendiz-Ponce, 127 S.Ct. 782, 788 (2007) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).

The Indictment in this case meets those constitutional requirements. The Indictment tracks the language of the statute and alleges that the defendant:

> did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Health Care Benefit Programs
> . . . and to obtain, by means of false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody or control of, said Health Care Benefit Programs in connection with the delivery of and payment for helath care benefits, items, and services.

See Indictment, at ¶ 1. The Indictment then goes on to describe with specificity the alleged scheme which, according to the government, involved "up-coding," that is, the practice of charging a health care benefit program for a clinical service that was reimbursable at a higher rate than appropriate for the service. The Indictment alleges that the defendant had a practice of charging for services at the highest based numerical code applicable for office-based evaluation and management visits even though the services preformed during those visits did not warrant billing at that numerical code. The Indictment then contains a "table of counts" which identifies 64 different occasions during which the defendant is alleged to have executed the scheme to defraud described in the Indictment. As to each count, the Indictment identifies the date that the service was performed, the health care benefit program that is alleged to be the victim of that count (either Univera, Medicare or Excellus), the claim number under which the claim was submitted and the alleged improper billing code used. The Indictment also

3

alleges that each of the alleged victims - Medicare, Univera and Excellus - are all "health care benefit programs" as defined in 18 U.S.C. § 24(b).  <u>See</u> Indictment, at ¶ 11.

The defendant argues, and the Magistrate Judge agrees, that the Indictment is deficient because it fails to allege that the scheme to defraud had an effect on interstate commerce.  The government objects to that finding.

Contrary to the position taken by the defendant and the Magistrate Judge, the Indictment does sufficiently allege that the scheme to defraud affected interstate commerce.  Although the words "interstate commerce" do not appear in the Indictment, the Indictment does allege that the scheme involved defrauding a "health care benefit program" as defined in 18 U.S.C. § 24(b).  Section 24(b) defines a "health care benefit program" as:

> any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

18 U.S.C. § 24(b).  Section § 24(b) is specifically incorporated into the Indictment by reference and, as such, the "affecting commerce" component of § 24(b) is also incorporated into the Indictment.  In other words, by referencing § 24(b)'s definition, the Indictment sufficiently alleges that the defendant engaged in activities that affected commerce, to wit, engaging in a scheme to defraud health care benefit programs that affected interstate commerce.[1]  The allegations in the Indictment together with the

---

[1]  The fact that the statute references only "affecting commerce" and not "affecting interstate commerce" is irrelevant to the issue of whether the Indictment notified the defendant of the jurisdictional element of the crime.  Section 24(b)'s reference to "affecting commerce" is clearly intended to signify invocation of Congress's authority to regulate activities that affect interstate commerce.  As the Supreme Court has repeatedly explained, '[e]ven activity that is

Indictment's specific reference to § 24(b) was sufficient to inform the defendant of the jurisdictional element of crimes with which he is charged.  See United States v.  Whited, 311 F.3d 259, 263 (3d Cir.  2002); United States v.  Brock, 3:06-CR-73, 2007 WL 540790 (E.D. Tenn.  Feb.  15, 2007).

The Court also rejects the defendant's contention that the Indictment is invalid because it fails to allege that the statements at issue were material.  To be sufficient, the Indictment need only allege facts that support an inference of materiality.  See United States v. McGough, 510 F.2d 598, 602 (5th Cir. 1975) ("If the facts alleged in the indictment warrant an inference that the false statement is material, the indictment is not fatally insufficient for its failure to allege materiality in *haec verba*." );  United States v. Olin Corp., 465 F.Supp.  1120 (W.D.N.Y. 1979) (holding that an indictment is sufficient if the facts alleged show the materiality of the statement at issue).

The defendant argues that the Indictment is invalid because the "table of counts" fails to incorporate by reference the other allegations in the Indictment.  However, ¶ 28 of the Indictment does specifically incorporate the table of counts by alleging that "on or about the dates set forth below" (meaning on or about the dates set forth in each count below), the defendant engaged in a scheme to defraud in violation of 18 U.S.C. § 1347.

---

purely intrastate in character may be regulated by Congress, where the activity, combined with like conduct by others similarly situated, affects commerce among the States or with foreign nations.' " Hodel v. Virginia Surface Mining & Recl. Assn., Inc., 452 U.S. 264, 276-277 (1981). By invoking the phrase "affecting commerce" Congress signified its intent to regulate activity that, *even if wholly intrastate in nature, affected interstate commerce*.  The Indictment's reference to § 24(b) which defines health care benefit program as "affecting commerce" sufficiently notified the defendant of the jurisdictional element of the crime.

Rule 7(c) provides that "[a] count may incorporate by reference an allegation made in another count."  <u>See</u> Fed. R. Crim. P. 7(c).  Therefore, this argument is rejected.

Because the Indictment contains all of the elements of the offenses charged and fairly informs the defendant of the charges against which he must defend, and does so with sufficient specificity to enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense, the Indictment is valid and the defendant's motion to dismiss is denied in its entirety.

**II.**     **Multiplicity of the Counts**

Alternatively, the defendant seeks dismissal of the Indictment on the grounds of multiplicity.  The Magistrate Judge agreed with the defendant and recommended dismissal on this ground also.  The government objects to that recommendation.  For the reasons stated, the Court finds that the Indictment is not multiplicitous and denies the motion to dismiss.

An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed.  <u>United States v. Chacko</u>, 169 F.3d 140, 145 (2d Cir. 1999); <u>United States v. Holmes</u>, 44 F.3d 1150, 1153-54 (2d Cir. 1995).  A multiplicitous indictment violates the Double Jeopardy Clause of the Fifth Amendment by subjecting a person to punishment for the same crime more than once.  <u>Chacko</u>, 169 F.3d at 145.

The defendant argues that the Indictment is multiplicitous because what is charged as 64 separate crimes really should be charged as one crime (a scheme to

6

commit health care fraud) and 64 acts that were committed in furtherance of that scheme. The Court does not agree. A proper reading of the Indictment reflects that it charges *64 separate executions* of a scheme to commit health care fraud based upon 64 different false claim submissions for 64 different dates of service.

The health care fraud statute was modeled after the bank fraud statute, 18 U.S.C. § 1344. Various circuit courts that have addressed the issue of multiplicity in the context of the bank fraud statute - including the Second Circuit - have consistently held that the bank fraud statute punishes each *execution* of a fraudulent scheme rather than each *act* in furtherance of such a scheme. United States v. Harris, 79 F.3d 223, 232 (2d Cir. 1996) (citing cases from the Third, Fifth, Seventh and Ninth Circuits). "In determining whether acts constitute separate executions of a scheme, courts have considered whether the acts were chronologically and substantively independent from the overall scheme." Id. Hence, where a defendant engaged in six separate requests for an extension of a loan agreement that were each chronologically and substantively independent from one another, the Second Circuit found that the counts were not multiplicitous. Id. Similarly, each bank deposit of a false check in bank-kiting scheme is generally understood to be a separate execution that is changeable as a separate count. See United States v. Poliak, 823 F.2d 371 (9th Cir. 1987), cert. denied, 485 U.S. 1029 (1988) (each fraudulent deposit constitutes a separate violation of § 1344(1)); United States v. Schwartz, 899 F.2d 243 (3d Cir.), cert. denied, 498 U.S. 901 (1990) (same); Wiener v. Napoli, 772 F.Supp. 109, 119 (E.D.N.Y. 1991) (same).

The Second Circuit has not specifically addressed the issue of multiple executions in the context of the health care fraud statute.  However, other courts that have done so have looked to the bank fraud statute by analogy and concluded that, like bank fraud, each execution of a scheme to commit health care fraud is chargeable as a separate offense.  See, e.g., United States v.  Hickman, 331 F.3d 439, 446 (5th Cir. 2003)("[T]he health care fraud statute, § 1347, punishes executions or attempted executions of schemes to defraud, and not simply acts in furtherance of the scheme.");[2] see also United States v. Cooper, 283 F.Supp.  2d 1215 (D.  Kan.  2003).  In Hickman, the Fifth Circuit explained:

> The nature of Hickman's scheme was to submit false claims to health insurers. The benefit was the money rendered by the insurer to TMM/Hickman after each false claim was processed, accepted, and paid. Financial gain was also the ultimate goal. In the end, Hickman defrauded several parties, but she primarily targeted Medicare and Medicaid. Although these factors are not particularly illuminating in this case, we find that the remaining factor-the interdependence of the acts-is dispositive. Hickman submitted each claim separately. Although she may have grouped them for efficiency, each claim was individually considered and approved. And, with each claim submission, Hickman owed a new, independent obligation to be truthful to the insurer. Hickman's scheme was, in essence, a check-kiting scheme in the health care industry. We see no reason to treat it differently from those in the bank fraud context.

Hickman, 331 F.3d at 446-47.  Similarly, the Cooper court explained:

> [E]ach claim containing false representations and the corresponding receipt of payment on that claim was a separate and distinct execution of the same scheme, not an integrally-related act in furtherance of a single offense. There is nothing to suggest that the individual counts are based

---

[2]   The defendant cites to language in footnote 7 of Hickman in support of his arguments. The language cited by the defendant obviously is taken out of context.  When footnote 7 is read in the context of the entire case, it is clear that Hickman supports the government's position that each execution of the health care fraud statue is chargeable as a separate offense.

8

> on nothing more than the defendants submitting again and again the same false claim on the same Medicare beneficiary. Indeed, each false claim appears to be separate from the other and to involve different beneficiaries. The payment on each claim involved a separate movement of money, and each movement resulted in a separate loss to the health care benefit program.

Cooper, 283 F.Supp.2d at 1234.

As in Hickman and Cooper, each count of the Indictment alleges a separate and distinct execution of the up-coding scheme.  Each execution involved a separate and distinct request for payment from the specified health care benefit program as to a specific date of service and patient, and each request for payment carried with it an independent obligation to be truthful.  "With each count, the government must prove some different facts."  Cooper, 283 F.Supp.2d at 1234.  The Court finds no multiplicity in Counts 1 through 64 and denies the defendant's motion to dismiss on that ground.

**III.    Constitutionality of § 1347**

The defendant also argues that the charges against him should be dismissed because § 1347 is unconstitutional.  More specifically, the defendant asserts that the statute's failure to contain an express jurisdictional element that the activity at issue affect interstate commerce renders it unconstitutional.  Magistrate Judge Scott found it unnecessary to address this issue in light of his recommendation that the Indictment be dismissed on other grounds.  In the interest of judicial economy, this Court will address the motion to dismiss on constitutional grounds in the first instance rather than referring the motion back to the Magistrate Judge for further consideration.

9

The Commerce Clause of the United States Constitution expressly grants Congress the authority "[t]o regulate Commerce with foreign Nations, and among the several States and with the Indian Tribes."  U.S. Const. Art. I, § 8, cl. 3.  In <u>United States v. Lopez</u>, 514 U.S. 549 (1995), the Supreme Court, discussing the scope of Congress' authority under the Commerce Clause, identified three broad categories of activity that Congress has authority to regulate under its commerce power:

> First, Congress may regulate the use of the channels of interstate commerce.  Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce.

<u>Lopez</u>, 514 U.S. at 558-59 (internal citations omitted).  In <u>Lopez</u>, the Supreme Court held that the Gun-Free School Zones Act, 18 U.S.C. § 922(g)(q)(1)(A), which made it a crime to knowingly possess a firearm in a school zone, exceeded Congress' authority under the Commerce Clause because possession of a gun was not economic activity that substantially affected interstate commerce.  The <u>Lopez</u> decision concerned only the third category of commerce authority, <u>i.e.</u>, the authority to regulate activities that "affect" or "substantially affect" interstate commerce.  <u>Id.</u> at 559.  The Court concluded that because possession of a gun was in no sense "economic" activity, and the statute lacked any jurisdictional element that would ensure through a case-by-case inquiry that the activity had the requisite nexus with interstate commerce, Congress exceeded its commerce power when it enacted the statute.

In <u>United States v. Morrison</u>, 529 U.S. 598 (2000), the Court again addressed the scope of Congressional authority under the Commerce Clause.  In that case, the Court held that Congress exceeded its authority when it enacted a civil remedy provision to the Violence Against Women Act, which provided a federal civil remedy for victims of gender-motivated violence.  As with <u>Lopez</u>, the statute at issue in <u>Morrison</u> was enacted pursuant to Congress' authority under the third category of commerce powers.  <u>Morrison</u>, 529 U.S. at 609-10.  The Court found that because the activity in question (gender-motivated violence) was not economic in nature and because the statute contained no jurisdictional element to ensure that the activity was sufficiently tied to interstate commerce, the activity did not substantially affect interstate commerce.  <u>Id.</u> at 613-14.

Like the statutes at issue in <u>Lopez</u> and <u>Morrison</u>, § 1347 is properly analyzed as an attempt by Congress to regulate within the third category of its commerce powers - activities that are substantially related to interstate commerce.  Under this power, Congress has the authority to regulate conduct that, *in the aggregate*, has a substantial effect on interstate commerce.  In <u>Lopez</u> and <u>Morrison</u>,  the Supreme Court identified four considerations relevant this inquiry:

> 1) the economic nature of the regulated activity; 2) a jurisdictional element limiting the reach of the law to a discrete set of activities that additionally has an explicit connection with or effect on interstate commerce; 3) express Congressional findings regarding the effects upon interstate commerce of the activity in question; and 4) the link between the regulated activity and interstate commerce.

All four of those considerations support the conclusion that § 1347 was a proper exercise of Commerce Clause authority.  The reimbursement of expenses for health care services is an economic activity.  Congress sought to limit the reach of the statute by defining a "health care benefit program" as a program that affects commerce. Congress' conclusion that health care fraud affects commerce is supported by express Congressional findings, and there is a direct link between that activity and its effect on interstate commerce.  The Fifth Circuit has also considered this question and found that § 1347 is a valid exercise of Congressional authority.  See United States v.  Ogba, 536 F.3d 214 (5th Cir. 2008) ("Congress had the power to enact the Health Care Fraud and Illegal Real Remuneration statutes [including 18 U.S.C. § 1347] under the Commerce Clause of the Constitution, and offenses charged under these statutes do not fall outside of Congress's constitutionally-granted powers."); see also United States v.  Hickman, 331 F.3d 439, 444 (5th Cir.  2003) ("[I]t cannot seriously be contended that [Medicare, Medicaid and large private insurance companies] and their functions do not affect commerce.").  Like the Fifth Circuit, this Court concludes that enactment of § 1347 was a valid exercise of Commerce Clause power.  Therefore, the  defendant's motion to dismiss the Indictment based upon the constitutionality of § 1347 is denied.

## CONCLUSION

For the reasons stated, the Court denies the defendant's motion to dismiss in all respects and declines to adopt Magistrate Judge Scott's report and recommendation. The parties have advised the Court that other pretrial motions remain pending before the

12

Magistrate Judge.  The parties shall appear for a status conference on July 30, 2008, at

9:00 a.m., to advise the Court of the status and set a trial date.  If the pending pretrial

motions are resolved before July 30th, the parties shall contact the Court for an earlier

appearance date.

       SO ORDERED.

                            s/ *Richard J. Arcara*
                            HONORABLE RICHARD J. ARCARA
                            CHIEF JUDGE
                            UNITED STATES DISTRICT COURT

DATED:  July 1, 2008