UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                        **Hon. Hugh B. Scott**

                              v.                        06CR236A

                                                        **Order**

EZZAT M. SOLIMAN,

                              Defendant.

        Before the Court is a series of defense motions seeking various relief.  This Order

considers defendant's motion for discovery and other related relief (as detailed below) (Docket

No. 38, defense motion III; <u>see also</u> Docket No. 31).

*Procedural History*

        Originally, defendant filed an extensive omnibus motion seeking various forms of relief

(Docket No. 23), but the Court directed that defendant refile the motions separately rather than

file an oversize omnibus motion (Docket No. 26; <u>see</u> Docket No. 25).  Then, defendant filed four

motions (Docket No. 27 (motion I, for dismissal for facial insufficiency, on Commerce Clause

objections), 29 (motion II, dismissal for constitutional defects), 31 (motion III, for discovery,

particularization, and removal of surplusage), 33 (motion IV, for suppression of evidence)).  Due

to errors in the affidavits, defendant filed corrected motions and these became the motions

pending before the Court:  Docket Nos. 36 (dismissal for facial insufficiency, motion I), 37

(dismissal for constitutional grounds, aside from the Commerce Clause, motion II), 38 (for

discovery, particularization, and removal of surplusage, motions III), 39 (for suppression of

evidence, motion IV)).  Hereinafter, the Court will refer to the corrected versions of the motions.

The Court initially considered defense motion I (Docket No. 36), the motion to dismiss

for facial insufficiency, and motion III (Docket No. 38), the motions for discovery and other

relief, and issued a briefing schedule for those motions (Docket No. 35).  Responses to those

motions were due on or before December 28, 2007, with any reply, due on or before January 18,

2008, and oral argument of these motions held on January 24, 2008 (Docket Nos. 35, 45

(minutes)).  At the first oral argument, defendant proposed to submit a statement of the

outstanding discovery issues by listing the discovery materials he has received and the items still

at issue (Docket No. 45).  Defendant filed that submission on March 11, 2008 (Docket No. 46).

Defendant's other pending and argued motion, for dismissal for facial insufficiency (motion I),

was deemed submitted as of March 11, 2008.  On September 2, 2008, the Court heard further

argument as to the status of discovery sought in defense motion III.

The motions presently before the Court in this Order are motion III for discovery,

particularization, and to strike surplusage (Docket No. 38, see Docket No. 31[1]) and the

Government's motion for reciprocal discovery (see Docket No. 41, Gov't Response at 22), as

---

[1]In support of this motion, defendant filed the motion, Docket Nos. 38, 31; attorney's affirmation (formerly an affidavit, Docket No. 31), Docket No. 38; affidavit of David A. Hammond, Docket No. 38; defendant's memorandum of law, Docket No. 32; defendant's reply memorandum, with attachments, Docket No. 43; and defense attorney's reply affirmation with exhibits (the tables of discovery requests and the parties' positions on them, and an index of discovery items).

In opposition, the Government filed its responding memorandum with exhibits, Docket No. 41; see also Docket No. 60, Gov't Status Report.  The Government then filed a second status report on September 26, 2008, Docket No. 64, identifying the trial binder and its contents it intends to furnish to defendant on or before October 17, 2008.

noted by the Government during oral argument on September 2, 2008.  Motion III and the

Government's cross-motion were deemed submitted as of September 2, 2008.

The Court, in separate Reports & Recommendations, will consider defendant's fourth

motion to suppress (Docket No. 39, see Docket No. 33) and his second motion to dismiss on the

grounds of estoppel and interests of justice, vindictive prosecution, and defective grand jury

proceedings (Docket No. 37, see Docket No. 29).  The motion to suppress was deemed submitted

on September 2, 2008.  Defendant also argued, on September 2, 2008, that he needs the

discovery he seeks in this motion before he can reply adequately to the Government's response to

his second motion to dismiss on vindictive prosecution grounds.

Familiarity with the prior Report & Recommendation (Docket No. 47) and Order (Docket

No. 56) in this case is presumed.

## BACKGROUND

Defendant was indicted on a sixty-four count Indictment for health care fraud, in violation

of 18 U.S.C. §§ 1347 and 2 (Docket No. 1, Indictment).  There, the Government alleges that

from 2001 until February 2004, defendant knowingly and willfully executed and attempted to

execute a scheme to defraud Medicare Health Care Benefits Programs ("Programs") by "up-

coding" clinical services defendant rendered, by claiming services were performed (reimbursable

at a higher rate) rather than the appropriate services actually provided (id. ¶¶ 1, 2, 6, 11, 28).

Defendant is a physician who practiced in Warsaw, New York.  Defendant allegedly caused false

statements and misrepresentations of fact to be made to Programs and failed to use proper

medical and billing judgment to allow billing for the highest code (id. ¶¶ 24-25), and billing for

non-rendered clinical services to receive more money than for actual services rendered (id. ¶ 26).

Each count of the Indictment alleges a particular claim for a specific date where the codes are for the highest level (id. at pages 11-13, Table of Counts).

Defendant was arraigned and pled not guilty (Docket No. 6).

Defendant moved to dismiss the Indictment, challenging the constitutionality under the Commerce Clause of the statute which he was charged and the facial sufficiency of the Indictment (Docket No. 36; see Docket Nos. 27 (precursor to motions); see also Docket Nos. 29, 37 (motion II, dismiss on other constitutional grounds)).  After this Court rendered a Report & Recommendation on the motion to dismiss the Indictment (Docket No. 47), Chief Judge Arcara denied defendant's motion to dismiss the Indictment and denied his motion to dismiss on constitutional grounds (Docket No. 56).

This Court then scheduled briefing of defendant's remaining motions, with responses due for defendant's motion IV to suppress (Docket No. 39; see Docket No. 33 (precursor to this motion)) due by July 15, 2008, the Government's response due by July 29, 2008 (Docket No. 57), and a second round of arguments of this motion III, defendant's omnibus discovery motion (Docket No. 38), and defendant's motion to dismiss (Docket No. 37), were scheduled for August 4, 2008 (Docket No. 57).  At the parties' request, this schedule was extended briefly and argument was held on August 11, 2008.

*Defense Motion for Discovery, Particularization and to Strike Surplusage*

Defendant seeks discovery under Federal Rule of Criminal Procedure 16 and the Fifth and Sixth Amendments (Docket No. 38; see Docket No. 31 (precursor to this motion)) including Brady materials.  Defendant's reply affirmation lists defense discovery requests, the Government's responses thereto, and any remaining dispute following oral argument of March

2008 and subsequent conversations between the parties (Docket No. 46, Def. Atty. Reply Affirm. ¶¶ 2, 4-5, 8, Ex. Chart. The table lists 81 defense discovery requests that remain in dispute or outstanding (id. Ex. Chart[2]). The Court will review defendant's disputed demands as listed in his reply table and address them by categories set forth in that table (see also Docket No. 31).

Defendant argues that the CD-Rom disks of the over 60,000 documents seized from his office that the Government provided is insufficient since the contents of the disks are not Bates stamped or similar identification system for the individual documents contained in the disks and there is no easy retrieval system for the documents contained on any particular disks (such as cross-referencing between disks) (see Docket No. 46, Def. Atty. Reply Affirm. ¶¶ 5-7, Ex., Discovery Index).

He also seeks a Bill of Particulars (Docket No. 38, Sch. 2; see also Docket No. 46, Def. Atty. Reply Affirm. Ex. Table. Sch. 2) that particularizes the time, place, and manner defendant instructed his billing clerk to bill at the highest code (Docket No. 38, Sch. 2, ¶ 1). Defendant wants specified the supporting documents for each of the 64 counts (id. ¶ 2), arguably a discovery request (cf. id. Sch. 1, ¶¶ 17-21). Defendant also seeks the precise additional amounts allegedly received in the purported upcoding scheme (id. Sch. 2, ¶ 3). He also wants specified his liability under 18 U.S.C. § 2 as a principal (id. ¶ 4) and the identity of the principal actor (id. ¶ 5). As for the forfeiture claims, defendant seeks particularization of the proceeds (gross and net) traceable to the offenses alleged and the basis for forfeiture of any real property or motor

---

[2]The table also includes a schedule on the Bill of Particulars issue, id., Ex. Chart, Sch. 2, Particularization Chart.

vehicle (id. ¶¶ 6-8).  If liable for forfeiture, defendant contends only the net amount above his charges for actually rendered services should be subject to any forfeiture.

He also moves to strike surplusage from the Indictment, the allegations of wrongdoing that occurred outside of the period of the scheme alleged in the Indictment (Docket No. 38, Schedule 3, ¶ 1).  The forfeiture allegations seek forfeiture of gross proceeds traceable to the offense, rather than the net incremental increase above whatever defendant was entitled to, therefore defendant concludes that references to gross proceeds also should be stricken (id. ¶ 2).

The Government states that it provided initial and supplemental discovery responses (Docket No. 41, Gov't Response at 1-2, 2-12, Exs. B, C, D, E, F, G, H).  The Government next addressed particular discovery requests to which the defense now objects (id. at 2-12).  As for particularization, the Government stated that a Bill of Particulars is not necessary as to the forfeiture count in the Indictment since the assets subject to forfeiture were specified in the Indictment (id. at 17-18), but outlined the gross proceeds traceable to the offenses alleged (as sought by defendant) (id. at 18).  The real estate and motor vehicles identified in the forfeiture count are substitute properties to the amount of gross proceeds derived from the offense (id. at 19).  The Government argues that the forfeiture count is sufficient (id. at 21-22).  The Government, however, does not address defendant's request for a Bill of Particulars as to substantive count I.  As for surplussage, the Government argues that the exacting standard for striking surplussage was not met here (id. at 19-20), where a motion to strike should be granted only if it is clear that the allegations are irrelevant to the charge and are inflammatory or prejudicial, see United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990).

6

**DISCUSSION**

I.      Discovery

Defendant seeks various items of pretrial discovery.  Although there is no general

constitutional right to pretrial discovery in a federal criminal case, a defendant does have a

pretrial discovery right with respect to certain matters.  For example, under the Fifth

Amendment's Due Process Clause, a defendant is entitled to specific exculpatory evidence which

is material either to guilt or punishment.  In addition, the Government has certain disclosure

obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act,

18 U.S.C. § 3500.

In his reply, defendant furnished a thirty-page table comparing the parties' contentions

with another eleven pages attached describing the Government's discovery productions (Docket

No. 46).  If the last column in this first table, the defense reply, is blank, the issue is presumed to

have been resolved (id. ¶ 2).  A cursory review of that chart reveals that most of the issues argued

in defendant's discovery motion remain unresolved.

A.      Documents

One major area of production is reproduction of the over 60,000 documents seized from

defendant's files (cf. Docket No. 46, Def. Reply, Chart § 13).  The Government produced a series

of CD-Rom disks which contain copies of these documents but without an index or any way to

locate a particular document from any given disk or allow for cross referencing between disks.

Defendant seeks to have these materials indexed in a manner that would allow him to retrieve

documents and also urges cooperative discussions with the Government for discovery of

electronically stored information (see Docket No. 46, Def. Reply, Chart ¶¶ 71-78).  The issue is

whether affording inspection of either 60,000 plus pages of hard documents or providing an unindexed set of CD-Rom disks suffices, and (if insufficient) which party should bear the burden of making those documents available in a more useful manner.  At the latest oral argument, defendant states that the situation had not changed since March 2008 when he filed his reply papers.

Defendant notes that the Government offered, and then refused, to reproduce the disks of documents with a set in a useable format with "useful additions (e.g., Bates® numbering)" (Docket No. 46, Def. Atty. Affirm. ¶ 6).  Rule 16(a)(1)(E) provides that, upon defendant's request, the Government must permit "the defendant to inspect and to copy or photograph" books, papers, and like items in the Government's possession.  There is no preference within the Rules between inspection and copying.  Where the Government has undertaken to copy materials (especially voluminous amounts of material), the reproduction should be made in such a way that documents are readily retrievable.  Reproducing these disks in some accessible manner that is readily understood by the parties (and ultimately the Court, if these documents are introduced at trial) is the best way to handle the volume of documents produced to date.  Therefore, defendant's motion as to this ground is **granted** and the Government **shall reproduce** a new set of CD-Rom disks of its production to defendant in some readily accessible format.

B.    Brady

Defendant has requested that the Government disclose all materials potentially favorable to the defendant, including information to be used for the impeachment of the Government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny (Docket No. 38, Sch. I, Discovery ¶¶ 48-68; Docket No. 46, Def. Reply, Chart ¶¶ 48-59, 60-68, 81)).

Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment.  Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct . . . attributed to the [Government's] witness."  United States v. Kiszewski, 877 F.2d 210 (2d Cir. 1989).

Defendant's motion identifies numerous specific categories of documents encompassing both exculpatory and impeachment Brady materials which they seek to obtain.  The Government's written response is that it acknowledges its duty to provide exculpatory evidence and impeachment material against Government witnesses and it agrees to produce impeachment Brady material with its Jencks Act materials (Docket No. 41, Gov't Response at 11-12)

The Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial) **is sufficient** in this case.

C.    Jencks Act

Defendant seeks immediate disclosure of material subject to the Jencks Act, 18 U.S.C. § 3500 (see Docket No. 46, Def. Reply, Chart ¶ 47).  The Jencks Act governs the disclosure of information and statements relating to the Government's witnesses.  Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until after the witness has testified at trial.  In this case, the Government has agreed to disclose this information two weeks prior to trial or as ordered by the District Court (Docket No. 41, Gov't

Response Ex. B, ¶ 3).  Defendant has not established that prior disclosure of Jencks material is essential to the preparation of a defense in this case.

      D.      Other Disclosures and Discovery

Defendant also seeks various other materials in discovery.

      1.      Transcripts of Testimony

Defendant seeks transcripts of testimony relating to criminal activity by any agent or employee of defendant before any grand jury.  The Government objects because defendant seeks disclosure of items protected by Rule 16(a)(2), but the Government is willing to offer documents responsive under the Jencks Act.  (Docket No. 41, Gov't Br. at 3, Ex. B, ¶ 4.)  Defendant insists upon production of any transcript of testimony or at least awareness of any statements that are to be attributed to him (Docket No. 46, Def. Reply, Chart ¶ 2).  Jencks Act production here, if these transcripts fall under the ambit of that Act, **is sufficient**.

      2.      Examination Results and Expert Disclosure

Currently at issue is the timing for the Government's disclosure, with defendant objecting to disclosure when the Government seeks to make its trial disclosures (Docket No. 46, Def. Reply, Chart ¶¶ 3, 4-8).  Defendant **is entitled** to this material and the Government **shall produce** pursuant to the final pretrial Order of the District Judge.

      3.      Grand Jury Materials

Defendant seeks two categories of grand jury materials.  First, he seeks the extend summarized or hearsay testimony was used before the grand jury (Docket No. 46, Def. Reply Chart ¶ 9) and the legal instructions given to the grand jury (id. ¶ 10).  Defendant's arguments center on his belief that the grand jury was misled by summaries or incorrect instruction of the

law.  He seeks this grand jury material ultimately to challenge the Indictment before this Court.

(Docket No. 43, Def. Reply at 6-7.)

Disclosure of grand jury materials is made "upon a showing that grounds may exist for a

motion to dismiss the indictment because of a matter that occurred before the grand jury," Fed.

R. Cr. P. 6(e)(3)(E)(ii) (see Docket No. 41, Gov't Br. at 3).  Defendant here alleges various

grounds that support such a motion, requiring this disclosure to establish the record for trial court

examination of the conduct of the grand jury.

As for the use of summaries or other hearsay, while not favored, there is no prohibition

against its use, United States v. Hogan, 712 F.2d 757, 761 (2d Cir. 1983).  Defendant has not

shown a sufficient basis for disclosure of these grand jury materials.  As for the legal instructions

given to the grand jury, however, prosecutors advise grand juries of the law but there are limits

on the presentation to the grand jury to maintain their independence and to avoid prosecutorial

misconduct, id. at 759; see United States v. Ciambrone, 601 F.2d 616, 6223 (2d Cir. 1979)

(prosecutor may not mislead the grand jury).  Disclosure of these instructions is necessary to

establish whether prosecutorial misconduct had occurred; therefore, defendant's motion as to

disclosure of any legal instructions given to the grand jury is **granted**.

4.      Materials from Prior and Subsequent Searches

Defendant next seeks any document or information about searches of his office prior to or

after execution of the December 2004 search warrant.  Defendant's motion to suppress attacks

the validity and execution of that December 2004 warrant (cf. Docket No. 39, defense

motion IV).  The Government invited defendant to file a distinct suppression motion if he

believed that any warrantless search was conducted of his office (Docket No. 41, Gov't Br. at 6).

11

Defendant replies that it is the Government that is obligated to disclose the searches and seizures

it has conducted (Docket No. 43, Def. Reply at 8).  The issue here is which party is required to

begin, the Government, which knows whether such a search occurred, or defendant, who believes

that he has been searched.  Rule 12(b)(4)(B) requires that the Government give notice of its

intent to use in its case-in-chief any evidence that the defendant may be entitled to discover under

Rule 16, in order to have an opportunity to move to suppress it, cf. United States v. Lujan, 530 F.

Supp. 2d 1224, 1246 (D.N.M. 2008) (if the Government knows that it does not intend to

introduce evidence from a warrantless search or seizure, it must notify defendants of this fact

immediately under Rule 12(b)(4)(B)).  Thus, **the Government has the burden** to notify

defendant whether such evidence will be used against him to allow defendant the opportunity to

move to suppress it; defendant's motion to compel this notice is **granted**.

      5.      Materials the Government Makes Available for Inspection

Several items defendant seeks (for example documents obtained from the Genesee

County Sheriff) are available for inspection but defendant wants produced copies (see Docket

No. 46, Def. Reply, Chart ¶ 14).  Again, the issue here is which party bears the burden of this

production, the Government (which has the documents) or the defendant.  Since the Government

is compelled to produce copies of other documents (as declared above), **it should produce

copies of these documents** as well; defendant's motion to compel these items is **granted**.

      6.      Health Care Benefit Program Documents

Next, defendant seeks various documents from any Program (i.e., Medicare, Excellus, or

Univera) relating to investigations of defendant, billings, claims submitted by defendant to the

Programs (Docket No. 46, Def. Reply, Chart ¶¶ 17-18, 20-33).  He contends that these

documents are material to preparation of his defense (e.g., Docket No. 32, Def. Memo. at 8; Docket No. 43, Def. Reply at 8). Many of these documents are probably part of the 60,000 pages copied on the CD-Rom disks or available in hard copy for inspection if defendant was copied by the Program or other third parties with the document originally and that copy was part of the materials seized from his office. The Government contends that its supplemental discovery in 2007 provided claims data and medical record data, while other documents (such as heath care benefit enrollment forms, electronic claim submission forms, and peer analysis information) are available for inspection (Docket No. 41, Gov't Response at 7).

As with other discovery items, the issue boils down to whether the Government makes the documents available for inspection or does it produce copies of the documents. And, as with other categories of documents for the Government to produce, the Government **should furnish copies of these documents**.

As for Program documents not referred to in the Indictment, defendant contends that the Government has not declared that it has pertinent documents (id. ¶ 34). The Government **should declare** whether it has responsive documents.

7.      Third Party Documents

Defendant wants produced any documents the Government received from third parties (such as utilities, banks, and common carriers), even if the Government did not compel production from these third parties [(Docket No. 46, Def. Reply, Chart ¶¶ 35-37). The Government responded that it did not compel production from third parties (Docket No. 41, Gov't Response at 7). It declared that it had documents from two banks and an investment house. Given the nature of the case here, alleged Medicare fraud and forfeiture of property

13

allegedly obtained through that fraud, the Government's production on this request **is sufficient**; the other items sought by defendant here (regarding utilities or common carriers) are purely a fishing expedition and need not be furnished.

> 8.    Pen Registers

Defendant next argues that the Government has not stated whether there exists pen registers or the use of electronic surveillance against him (Docket No. 46, Def. Reply, Chart ¶ 42). As with notice regarding possible warrantless searches discussed above, under Rule 12(b)(4)(B) the Government **is obliged** to state whether pen registers or electronic surveillance was conducted against defendant.

> 9.    Disclosure of Information about Defendant's Former Employees

Defendant contends that when the Government seized his records it took his personnel records, restricting his ability to contact his employees as potential witnesses. Those employees or former staff he contacted intimated that the Government had instructed them not to cooperate with him (with threats of possible prosecution or frightening them by stating that defendant had terrorist ties). (Docket No. 32, Def. Memo. at 9.) Although defendant states that the Government has not responded to these requests (Docket No. 46, Def. Reply, Chart ¶¶ 44-46), the Government has object to providing this information in general, while it is willing to identify its witnesses who also were defendant's employees (Docket No. 41, Gov't Response at 11).

The Government should disclose former employees it intends to call as witnesses. Beyond that, within the 60,000 pages of seized documents should be defendant's personnel records. While both parties should avoid potential witness intimidation, see 18 U.S.C. § 1512(b)(2)(A), (C), (D), the Government is not obligated to locate witnesses for the defense.

10.     Rule 404(b) Disclosure

Finally, defendant seeks disclosure of all evidence of prior bad acts that the Government

intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b).  He also requests

disclosure of all evidence of prior bad acts that the Government intends to use for impeachment

of defendant should he testify at trial, pursuant to Rules 608(b) and 609(a).  (Docket No. 46, Def.

Reply, Chart ¶¶ 69-70.)

Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or

during trial if the court excuses pretrial notice on good cause shown, of the general nature of any

such evidence it intends to use at trial."  The Government states that the seized documents

contain Rule 404(b) evidence that it intends to use it at trial and the Government will provide

reasonable notice prior to trial of the specific, other act documentation (id., Chart ¶ 67).

Given the volume of documents in this case, the notice above is **not sufficient**, <u>see</u>

<u>United States v. Laughlin</u>, 768 F. Supp. 957, 967 (N.D.N.Y. 1991).  The Government should

specifically identify the documents responsive to Rule 404(b) disclosure.

II.     Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct

the filing of a Bill of Particulars.  Bills of Particulars are to be used only to protect a defendant

from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at

trial.  <u>United States v. Torres</u>, 901 F.2d 205 (2d Cir. 1990).  The Government is not obligated to

"preview its case or expose its legal theory" <u>United States v. LaMorte</u>, 744 F. Supp. 573

(S.D.N.Y. 1990); <u>United States v. Leonelli</u>, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it

disclose the precise "manner in which the crime charged is alleged to have been committed,"

United States v. Andrews, 381 F.2d 377 (2d Cir. 1967).

      A.      Specifying Information on Substantive Count

Defendant argues that he needs specification for each of the 64 substantive counts of the

Indictment.  These counts are listed in a summary table by account number allegedly affected by

defendant's billing practice, while the initial portion of the Indictment outlines the scheme in

general.  In disclosure, the Government furnished a listing of patient identifying information and

payment information for each count (see Docket No. 46, Def. Reply, Chart, Particularization ¶ 2,

at 28).  Defendant argues that the Government fails to identify the documents constituting the

claim submitted for each count (id.).

The claim for each is likely the billing submitted by defendant to the Programs for

payment.  Inasmuch the Government has not produced these documents or identified among the

production which documents it contends are the claims for each count, the Government **should

do so**.  Otherwise, the other initially outstanding particularization issues were dealt with by the

parties.

      B.      Section 2 Principal Liability

Title 18 U.S.C. § 2 defines principal liability as either committing an offense against the

United States, or aiding, abetting, counseling, commanding, inducing or procuring its

commission, id. § 2(a), or willfully causing an act to be done which "if directly performed by him

or another would be an offense against the United States," id. § 2(b).  As for counts under this

section, defendant sought specificity as to how he was rendered the principal (Docket No. 46,

16

Def. Reply, Particularization Chart ¶ 4, at 29).  The Government's response appears to have

satisfied the defendant (see id.).

      C.     Forfeiture

      Defendant argues that the Government fails to specify the proceeds attributable to the

upcoding scheme, either the gross proceeds or the net difference between the services rendered

and those charged, and the connection between the offenses and the properties listed for

forfeiture (id. ¶ 6, at 28).  The Government's response on this ground (see Docket No. 41, Gov't

Response at 18) also appears to have satisfied defendant (Docket No. 46, Def. Reply,

Particularization Chart ¶ 6).

      In sum, defendant's motion for particularization is granted in part and deemed moot in

part where the Government has responded without further objection by defendant.

III.    Surplusage

      Under Rule 7(d) the Court may strike surplusage from the Indictment, see Dranow v.

United States, 307 F.2d 545, 558 (8th Cir. 1962) (court's discretion in striking surplusage);

United States v. Parker, 165 F. Supp. 2d 431, 471 (W.D.N.Y. 2001) (Foschio, Mag. J.) (citing

Dranow for same proposition).  "Motion to strike surplusage from an indictment will be granted

only where the challenged allegations are not relevant to the crime charged and are inflammatory

and prejudicial," United States v. Mulder, 273 F.3d 91, 99-100 (2d Cir. 2001); see Scarpa, supra,

913 F.2d at 1013.  Defendant points to two areas of surplusage, first the Government alleges

accounts were overcharged before or after the period of the alleged scheme (2001-February 2004,

see Docket No. 1, Indict. ¶¶ 1-2; Docket No. 32, Def. Memo. at 22); second, that the forfeiture

claims seek gross proceeds rather than the net proceeds of the excess claim (excluding amounts for services actually rendered) (Docket No. 32, Def. Memo. at 23).

The Indictment alleges that "beginning <u>at least</u> as early as 2001, and continuing until <u>at least</u> February, 2004, the exact dates being unknown to the Grand Jury" (Docket No. 1, Indict. ¶ 1, emphasis added), apparently implying prior and subsequent upcoding activities.  The Indictment alleges billings for services rendered from November 30, 2001 (<u>id.</u>, Count 33) to October 24, 2003 (<u>id.</u>, Count 24), with most counts arising from claimed services in 2002 and 2003.  The Court **declines** to strike the vague temporal references of the date range for the alleged offenses.  The unknown range of this activity is relevant to the offenses alleged for the believed known period and are not inflammatory or prejudicial (<u>cf.</u> Docket No. 41, Gov't Response at 20).

As for the gross proceeds for forfeiture rather than the net proceeds from defendant's alleged upcoding, the issue in this case is whether defendant rendered the services he claimed by the codes he submitted to the Programs for compensation.  The Government responds that the forfeiture provision for health care fraud authorizes forfeiture of property derived directly or indirectly from the "gross proceeds traceable to the commission of the offense," 18 U.S.C. § 982(a)(7), rather than mere net proceeds as allowed for forfeitures for other offenses (Docket No. 41, Gov't Response at 21-22).  The Court also **declines** to strike the gross proceeds references in the forfeiture count as surplusage.  Defendant's motion to strike surplusage is therefore **denied**.

IV.     Government's Reciprocal Discovery

Finally, the Government cross moves for defendant to respond to its discovery requests (<u>see</u> Docket No. 41, Gov't Response at 22).  Under Rule 16, the Government is entitled to production of documents in defendant's possession that either defendant intends to use in their respective case-in-chief.  Defendant is reminded of his obligations under Rule 16 to produce pursuant to the Government's notice for discovery, therefore, the Government's motion is **granted**.

V.      Briefing Defense Motion to Dismiss

Defendant noted in one of his responses (Docket No. 63 at 1 n.1) that he had not responded to the pending defense motion II to dismiss on non-constitutional grounds because no formal briefing schedule was issued for that motion, despite the Government's response to that motion (<u>cf.</u> Docket No. 59) and later argued that discovery was necessary before he could respond to that particular motion.  Given the discovery outlined above, a briefing schedule can be set forth for the motion to dismiss.

Defense reply to the Government's response to defense motion II is due by **November 7, 2008**.  This motion will be argued on **Monday, November 24, 2008, at 10 am**, before the undersigned.

## CONCLUSION

For the reasons stated above, defendant's motion III for discovery (Docket No. 38), is **granted in part, denied in part** as described above in greater detail.  His motion for particularization (Docket No. 38) is **granted in part, otherwise deemed moot in part** as described above.  Defendant's motion to strike surplusage (Docket No. 38) is **denied**.

19

The Government's reciprocal motion for discovery (Docket No. 41, Gov't Response at 22) is **granted**.

Briefing for the remaining defense motion II to dismiss on non-constitutional grounds (Docket No. 37) is as follows, defense reply (if any) is due by **November 7, 2008**, argument of this motion shall be held on **Monday, November 24, 2008, at 10 am**, before the undersigned.

So Ordered.

/s/ Hugh B. Scott
_____
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        September 30, 2008