UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                v.

EZZAT M. SOLIMAN,

                Defendant.
_____

**Hon. Hugh B. Scott**

06CR236A

**Report
&
Recommendation**

      This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 7). The instant matter before the Court is a series of defense motions seeking various relief. This Report & Recommendation considers defendant's motion to suppress (as detailed below) (Docket No. 39, defense motion IV; see Docket No. 33).

*Procedural History*

      Originally, defendant filed an omnibus motion seeking this relief (among others) (Docket No. 23), but the Court directed that defendant refile the motions as separate motions rather than file an oversize omnibus motion (Docket No. 26; see Docket No. 25). Then, defendant filed four motions (Docket No. 27 (motion I, for dismissal for facial insufficiency), 29 (motion II, dismissal for constitutional defects), 31 (motion III, for discovery, particularization, and removal of surplusage), 33 (motion IV, for suppression of evidence)). Due to errors in the affidavits, defendant filed corrected motions and attorney's affirmations and the Court terminated the first set of motions.

The following motions remain pending before the Court: Docket Nos. 37 (dismissal for constitutional defects, motion II), 38 (for discovery, particularization, and removal of surplusage, motions III), and 39 (for suppression of evidence, motion IV)).  Hereinafter, the Court will refer to the corrected versions of the motions.

The Court initially considered first motion I (Docket No. 36), the motion to dismiss for facial insufficiency, and motion III (Docket No. 38), the motions for discovery and other relief, and issued a briefing schedule for those motions (Docket No. 35).  These motions were argued on January 24, 2008 (Docket Nos. 35, 45 (minutes)), and the first motion was deemed submitted on March 11, 2008, when additional materials were submitted by defendant on motion III for discovery.  This Court issued a Report and Recommendations (Docket No. 47) as to motion I which was rejected and an Order was entered by Chief Judge Arcara as to the constitutionality of the underlying statute and the sufficiency of the allegation thereof in the Indictment (Docket No. 56).  Familiarity with the prior Report & Recommendation (Docket No. 47) and Orders (Docket Nos. 56, 66-68) in this case is presumed.

This Report & Recommendation considers one of the remaining motions, defendant's motion to suppress evidence (Docket No. 39, see Docket No. 33[1]), motion IV.  Separately, the Court issued an Order considering motion III for discovery, particularization, and to strike surplusage (Docket Nos. 66-68 (Orders), 38 (revised motion), see Docket No. 31; see also Docket No. 57, Order briefing for motion III).  Defendant argued, on September 2, 2008, that an

---

[1]In support of this motion, defendant filed the motion, Docket Nos. 33, 39; attorney's affirmation (again, formerly an affidavit, Docket No. 33), Docket No. 39; defendant's memorandum of law, Docket No. 34; and defendant's reply memorandum, Docket No. 63.
    In opposition, the Government submitted its Brief, Docket No. 58; see also Docket No. 60, Gov't Status Report.

evidentiary hearing should be held as to the motion to suppress. The Court reserved decision on the motion to suppress and it was deemed submitted on September 2, 2008, at least as to the issue whether an evidentiary hearing is warranted.

Defendant's motion to dismiss on the grounds of estoppel and interests of justice, vindictive prosecution, and defective grand jury proceedings (Docket No. 37, see Docket No. 29), motion II, will be addressed after further briefing and argument (see Docket Nos. 66, 67, Orders at 19, 20).

## BACKGROUND

Defendant was indicted on a sixty-four count Indictment for health care fraud, in violation of 18 U.S.C. §§ 1347 and 2 (Docket No. 1, Indictment). There, the Government alleges that from 2001 until February 2004, defendant knowingly and willfully executed and attempted to execute a scheme to defraud Medicare Health Care Benefits Programs ("Programs") by "up-coding" clinical services defendant rendered, by claiming services were performed (reimbursable at a higher rate) rather than the appropriate services actually provided (id. ¶¶ 1, 2, 6, 11, 28). Defendant is a physician who practiced in Warsaw, New York, who allegedly caused false statements and misrepresentations of fact to be made to Programs, failed to use proper medical and billing judgment to allow billing for the highest code (id. ¶¶ 24-25), and billed for non-rendered clinical services to receive more money than for actual services rendered (id. ¶ 26). Each count of the Indictment alleges a particular claim for a specific date where the codes are for the highest level (id. at pages 11-13, Table of Counts). The Government also seeks forfeiture of over $81,000 in proceeds from the alleged fraud to be executed upon defendant's cash, his Warsaw office, his real property owned in several locations (in Silver Springs, New York;

Warsaw, New York; Shippenburg, Pennsylvania; Palm Beach, Florida), and a 2003 Lexus registered to defendant (id. at pages 13-16).

Defendant was arraigned and pled not guilty (Docket No. 6).

*Defense Motion to Suppress*

At issue is the execution of a search warrant on December 17, 2004, of defendant's office in Warsaw, New York (see Docket No. 58, Gov't Responding Br. at 1, Ex. A). The search was limited to certain patients' records which had level 5 claims made by the defendant, that is, claims coded for three particular entries. The warrant sought patient records and files for listed patients, billing instruction or billing forms from defendant, reimbursement information on the listed patients, and former employee information, appointment information, and financial information related to the forfeiture assessment. (Id. at 8-9.)

The application for the warrant outlined the coding procedure for defendant and other health care providers to recover for services rendered (Docket No. 58, Ex. A, Jeffrey Doetterl Aff. ¶¶ 12-15). The Physicians' Current Procedural Terminology (or "CPT") code consists of five billing categories; the first four digits of the code reflect the type of treatment and the fifth code digit reflects the level of service billed by the provider (id. ¶ 14). For example, for office visits for established patients, the code range is from minimal to highly complex, with the recovery amounts reflecting the increased complexity of the treatment (id. ¶¶ 14, 17). The code for the "office visit–minimal," number 99211, had a reimbursement rate of $15, while the code for "office visit–highly complex decision making, comprehensive history and exam"[2], number

---

[2] The other categories within the range for this code are number 99212, "office visit–problem focused, straight forward decision making, history and exam"; number 99213, "office visit–expanded problem focused, low complexity decision making, history and exam";

4

99215³, had a rate of $90 (id.).  The agent alleged that defendant instructed his personnel to bill only the highest code (id. ¶ 15).  One Program furnished a peer analysis which the agent cited indicating a great disparity between how the area medical community coded office visits to how defendant coded such visits, by the percent of the total visits by code (id. ¶ 16).  The agent concluded that defendant billed at the highest code, 99215, at almost 99% of the time while other health providers billed only less than 1.6% of the time (id.).

     Defendant contends that the evidence seized from his office should be suppressed because the search was unreasonable, arguing that the warrant had the scope of a subpoena rather than the narrower scope of a search warrant.  Defendant denies that there was probable cause to search his office and that the search was based upon false allegations by a disgruntled former employee.  Defendant wants a <u>Franks</u> hearing as to the reliability of this employee as a basis for the warrant and the reasonableness of the search.  He contends that the warrant was overbroad, lacked particularity and that it was executed beyond its authorized scope.  Defendant also wants a hearing as to whether over 60,000 pages of documents were necessarily seized under this warrant  He seeks return of seized property under Rule 41(g).  (<u>See generally</u> Docket No. 39; <u>see also</u> Docket No. 33.)

---

and number 99214, "office visit–moderately complex decision making, detailed history and exam," Docket No. 58, Ex. A., Doetterl Aff. ¶ 14.

    ³Hence reference to "level 5" codes, <u>e.g.</u>, Docket No. 58, Ex. A, Doetterl Aff. ¶ 15.

DISCUSSION

I.  Motion to Suppress

   A.   Reasonableness of Search

Defendant first contends that a search warrant was unnecessary and unreasonable since the information sought could have been obtained by a subpoena (Docket No. 34, Def. Memo. at 1-2), see VonderAhe v. Howland, 508 F.2d 364, 369 (9th Cir. 1975). The Ninth Circuit found that "to proceed by the 'warrant' method without first seeking the desired papers by request or subpoena should be based upon the strongest showing of necessity but if such drastic procedure is to be availed of, it should be strictly limited as constitutionally required. Therefore, although there may have been 'probable cause' to search for and seize the yellow sheets and green cards [defendant's business records seized by the Internal Revenue Service general warrant] for 1966 and 1967, there was no probable cause shown for a seizure of all the doctor's dental books and records, or his personal and private papers." Id. The search and seizure of defendant's records in effect shut down his practice. He argues that the "'incriminating evidence'–the claims themselves–[were] virtually in the hands of the government," making resort to warrants abusive (id. at 3). The Government only responds that, for probable cause purposes, that "the Supreme Court has never held the availability of alternative document production measures constitutes part of the probable cause inquiry" (Docket No. 58, Gov't Responding Br. at 11; but cf. Docket No. 63, Def. Reply Memo. at 2), see Illinois v. Lafayette, 462 U.S. 640, 647 (1983).

The key difference between a search warrant and a subpoena is the level of intrusion into a person's privacy; a warrant requires entry of the agent to execute it while the subpoena is less intrusive, United States v. Vilar, 530 F. Supp. 2d 616, 630-31 (S.D.N.Y. 2008) (citing In re

Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d 847, 854 (9th Cir. 1991); Matter of Establishment Inspection of Skil Corp., 846 F.2d 1127, 1133 (7th Cir. 1988)).  Was it reasonable to have the added intrusion of a search warrant rather than a grand jury subpoena to obtain the same records?  Defendant has not shown authority for holding that the existence of an alternative means to obtain documents would make a search pursuant to a warrant unreasonable.  The Government could have resorted to issuing subpoenas to obtain these documents, but the fact that it had that option (with its inherent risks in delay or completeness of the subpoenaed party's response) does not render the search warrant unreasonable.  Thus, defendant's motion on this ground should be **denied.**

  B. Probable Cause for Issuance of Warrant

  The determination of probable cause by the issuing magistrate is given great deference, Illinois v. Gates, 462 U.S. 213, 236 (1983).  Probable cause to issue the warrant exists when, "given all the circumstances set forth in the affidavit before him," the judge can conclude "there is a fair probability that contraband or evidence of a crime will be found in a particular place," id. at 238.  Defendant contesting probable cause has a "heavy burden," Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991).  (Docket No. 58, Gov't Responding Br. at 9.)

  The Government contends that probable cause for issuance of this warrant existed from tripartite data of claims paid data analysis by public and private payors of defendant as compared with other Western New York orthopedic physicians; document analysis of medical record reviews for the support for level 5 claim submissions by defendant; and factual analysis of certain admissions by defendant to former employees concerning coding and billing practices to

code for the highest level of reimbursement without regard to actual services rendered (id. at 2, 10).

      Defendant contends that the warrant here fails the two probable cause requirements, that a crime has been committed and that evidence of the crime will be found at that place to be searched (Docket No. 34, Def. Memo. at 4), see United States v. Travisano, 724 F.2d 341, 346 (2d Cir. 1983).  He argues that his position on billing, "however unacceptable to the carriers" was a product of ignorance or error and not of criminality (id.).  Even if a crime is conceded, defendant disputes that search of any particular patient's file would indicate evidence of a crime (id.).  He also argues that there were misrepresentations of the truth in the warrant application affidavit, namely on the E & M Coding process, that were an integral part of the probable cause finding (id. at 5-6; see id. at 6-13 (explaining coding process); Docket No. 39, Def. Atty. Affirm. ¶¶ 21, 27-36).  Defendant states that the code process has more components than noted by the agent in applying for the warrant (Docket No. 34, Def. Memo. at 6-13).  But the defendant raises these factual assertions only by way of counsel's affirmation (an argumentative affirmation at that) and not by a fact or expert witness.  Defense counsel also notes that the Government did not disclose that a parallel civil proceeding was underway when it sought the search warrant (Docket No. 39, Def. Atty. Affirm. ¶¶ 24-26) and contests the honesty of calling defendant's records "concealed" while they were in fact merely "private" (id. ¶ 22).

      Defense counsel also objects to the former employee relied upon by the Government in obtaining this warrant (id. ¶ 23; cf. Docket No. 58, Ex. A, Doetterl Aff. ¶¶ 27-31) but fails to support his allegations against her credibility or raise a sufficient factual issue to require a Franks hearing on reliance upon that employee.  Even if the issuing Magistrate Judge erred in relying

upon that portion of the affidavit citing the former employee, the remainder of the affidavit furnished probable cause for issuance of the warrant, including interviews the agents made with other employees (Docket No. 58, Ex. A, Doetterl Aff. ¶¶ 32-46).

Defendant's argument goes to the underlying merits of the Government's case, that is whether defendant had the requisite criminal intent to have committed health care fraud, whether fraud had occurred at all or whether defendant incorrectly coded for the services rendered to his patients.  But for purpose of suppression of the seized evidence, the warrant application did state probable cause.  The nature of the treatment provided to defendant's patients–the data underlying the coding defendant did to recover for services rendered–and the billing submitted to Programs would be in the patients' files.  Hence, there was a fair probability that there would be evidence of a crime found in searching these records.  Defendant's motion to suppress on this ground should be **denied**.

    C.    Overbreadth of Warrant and Lack of Particularity

        1.    Overbreadth

Next, defendant argues that the warrant was "an obvious fishing expedition to search through and seize anything which might lead to a basis to prosecute, and nothing actually described as evidence of a crime" (Docket No. 34, Def. Memo. at 14), concluding that the Government used the warrant when a subpoena was the proper instrument.

The warrant application sought the search of all records for listed patients, including their medical records, intake forms, log books, attendance sheets, notes of doctors and other health care providers, correspondence, memoranda, legal forms, bills, appointment books, calendars, and any other document relating to the treatment of these patients; list of the names, addresses

9

and telephone numbers of current and past employees; records regarding billing of insurers; banking records; records regarding purchases; documents from brokerage or investment companies; appointment books and calendars; reimbursement checks; correspondence with Medicare, private insurers, patients, lawyers, affiliated doctors and others as relates to these patients (Docket No. 58, Ex. A, Doetterl Aff. ¶ 47 a.-i.), including search of computer hardware (id. ¶ 47 j., k.). Defendant termed this warrant to be a general warrant that allowed agents to seize everything to fish through later to find incriminating material (Docket No. 34, Def. Memo. at 15). He concludes that only three categories of items possibly could be considered evidence–those related to the patients' medical records (id. at 16).

The Government responds that the warrant was limited by the statutes implicated by the investigation, the list of patients, the particularized items to be seized, and the location of the search of just defendant's office (Docket No. 58, Gov't Responding Br. at 16). The Government defends the scope of the search to find evidence of defendant's state of mind, whether the records (or the absence thereof) showed defendant's culpable state of mind (id. at 16-17). The non-medical records aspect of the search provided evidence regarding the location and means to contact these patients (id. at 17) and financial information for the forfeiture count in the Indictment (id. at 20). The non-patient correspondence would show defendant's knowledge of the billing requirements and lead ultimately to his culpability (id. at 18-19). The list of former and current employees and their contact information also leads to additional evidence of defendant's intentions to upcode (id. at 19).

2. Particularity

Defendant complains that the Government should have particularized its identification of the records sought in this warrant since it had access to the claims themselves from the Program (Docket No. 34, Def. Memo. at 17). He contends that this is not a complex economic crime that would not require further particularization of the sought documents (id. at 20).

The warrant, while not detailing each type of document or item to be searched for, was sufficiently particular to direct the agents in conducting the search. First, the search is limited in most instances to a finite number of patients and their records, to billing correspondence between defendant and Programs, and financial documents of the purported fruits of the offense. As described by both sides, the billing process and alleged upcoding is complex, involving the treatment and billing records for numerous patients, and the communications between defendant and the Programs as to allowed charges and billing procedures. As such, the terms of the warrant were sufficiently particular. The warrant also was not overly broad to become a general warrant. Defendant's motion on these grounds also should be **denied**.

D. Scope of Execution

Next, defendant contends that Government agents made a wholesale seizure of 33 boxes of documents, amount to 65,000 pages of material including seizure of medical records of patients not identified in the warrant (Docket No. 34, Def. Memo. at 21) for 26 patients implicated in the Indictment (see Docket No. 63, Def. Reply Memo. at 18). Defendant further contend the seizure was so overbroad that he could not continue to operate his practice, literally closing down his practice during the search and seizure (Docket No. 34, Def. Memo. at 21, 22).

He concludes that the overly broad scope of this execution is grounds for suppression of the evidence seized, see United States v. Shi Yan Liu, 239 F.3d 138, 140 (2d Cir. 2000).

Blanket suppression sought by defendant here is ordered when a general search occurs, described by courts as a "wide-ranging exploratory searches," Maryland v. Garrison, 480 U.S. 79, 84 (1987); Shi Yan Liu, supra, 239 F.3d at 140, and "indiscriminate rummaging," United States v. George, 975 F.2d 72, 75 (2d Cir. 1992); Shi Yan Liu, supra, 239 F.3d at 140, and viewed as being "especially pernicious, and 'have long been deemed to violate fundamental rights,'" id. (quoting Marron v. United States, 275 U.S. 193, 195 (1927)).  "The rationale for blanket suppression is that a search that greatly exceeds the bounds of a warrant and is not conducted in good faith is essentially indistinguishable from a general search, Shi Yan Liu, supra, 239 F.3d at 141.

The Second Circuit in Shi Yan Liu set forth the standard for suppression of all fruit of a search that exceeds the scope of the warrant, declaring that "government agents 'flagrantly disregard' the terms of a warrant so that wholesale suppression is required only when (1) they effect a 'widespread seizure of items that were not within the scope of the warrant,' United States v. Mathias, 836 F.2d 744, 748 (2d Cir. 1988), and (2) do not act good faith," 239 F.3d at 140 (citations omitted), or where a search resembles execution of a general warrant, id. at 141.  The court noted that the relief sought–wholesale suppression–was "drastic," Mathias, supra, 836 F.2d at 747; Shi Yan Liu, 239 F.3d at 142.  The court affirmed the denial of defendants' motion to suppress (and their convictions), concluding that the search there was not a general search to meet the first prong of the above test of a "widespread seizure of items," id. at 141-42.  The agents there spent thirty minutes reviewing files looking for false immigration asylum

applications and finding false applications in numerous files from the same address, thus seizing all of the files, id. at 141. The court concluded that this search was "not 'indiscriminate rummaging'" and "not an 'exploratory' search for items not mentioned" in the warrant, id. The court then held that, even assuming that the search exceeded the bounds of the warrant, that defendants there did not show that the agents' search resembled the general warrant, id. at 142.

Here, as noted above, the warrant application stated particular categories for search and seizure (Docket No. 58, Ex. A, Doetterl Aff. ¶ 47) but in fairly broad categories, for example, defendant's financial records and his billing records and documentation submitted to Programs (id. ¶ 47 d., e., f., c., h., i.). The items obtained, despite their sheer quantity, fell within at least one category of items listed in the warrant. There was no indiscriminate rummaging or exploratory searching that would make this search akin to a general search. The one concern is the records for patients other than those specifically listed in the attachment to the warrant application (cf. id. ¶ 47 a., i., j.; Docket No. 39, Def. Motion ¶ 38, Def. Atty. Affirm. ¶ 37). Billing documents (Docket No. 58, Ex. A, Doetterl Aff. ¶ 47 c.) and appointment books (id. ¶ 47 g.) could include information for patients other than those listed in the earlier subparagraph for medical records of allegedly upcoded patients (id. ¶ 47 a.). Therefore, defendant's motion to suppress on this ground also should be **denied**.

E.     Absence of Good Faith

Defendant argues that the postal inspector executing the warrant could not believe the warrant was valid, given defendant's objections discussed above (Docket No. 34, Def. Memo. at 22). For the reasons stated above rejecting those objections, the inspector executing the warrant had a valid warrant to execute. Defendant's motion should be **rejected** on this ground as well.

F.      Hearing

Finally, defendant seeks a hearing for several of the contentions raised above, namely on the unreasonableness of conducting a search, the reliability of the former employee to support issuance of the warrant (Docket No. 63, Def. Reply Memo. at 10), the scope of the warrant and the overbreadth in the amount seized thereunder. As discussed above in each discrete point, a hearing **is not warranted**.

G.      Return of Property

Defendant seeks return of property seized, pursuant to Rule 41(g), and proposes that the Government bear the burden of identifying and providing reasonable access to any documents it maintains were properly seized as actual evidence of crime and within the proper scope of the warrant (Docket No. 39, Def. Motion ¶¶ 46-49; Docket No. 34, Def. Memo. at 24-25), see United States v. Mathis, 836 F.2d 744, 747 (2d Cir. 1988). Essentially, defendant wants the Government to create a standard database of the items seized, identify those items improperly seized from those described in the search warrant and return the former to defendant (Docket No. 39, Def. Motion ¶¶ 47-49). As noted by defendant (Docket No. 63, Def. Reply Memo. at 20), the Government has not refuted this proposed method.

Since the Order that disposed of defense motion III seeking discovery ordered the Government to reproduce copies of the seized documents in some readily accessible manner (Docket No. 66, Order at 8), the first step proposed by defendant of identification of discrete seized documents should occur. The only issue is identification of documents beyond the scope of the search warrant. Here patient records not involving the 26 patients identified in the warrant application and not otherwise included in some other category in the warrant should be

identified. The Government should cull through the documents produced, identify and return those materials not covered by the warrant.

## CONCLUSION

Based upon the above, it is recommended that defendant's motion IV to suppress evidence (Docket No. 39) be **denied in part, and granted in so far as items outside of the scope of the search warrant should be identified and returned to defendant**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
September 30, 2008