UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                             **Hon. Hugh B. Scott**

v.

                                             06CR236A

                                                  **Order**

EZZAT SOLIMAN,

                Defendant.

Before the Court is defendant's motion for subpoenas <u>duces tecum</u> to be served upon third parties, pursuant to Federal Rule of Criminal Procedure 17(c) (Docket No. 82[1]). This is renewal of an <u>ex parte</u> application defendant previously made (<u>id.</u>, Def. Atty. Aff., Ex. A) which was denied by the Court (Docket No. 73), familiarity with which is presumed. Defendant again seeks to subpoena documents from Excellus and Univera in support of his pending motion to dismiss on various grounds) (Docket No. 37). The motion was argued on April 27, 2009, the Court reserving decision, and the matter was deemed submitted following that argument (text minute entry of Apr. 27, 2009).

After objecting to the necessity to justify his third-party subpoenas and expose his defenses to the Government (Docket No. 82, Def. Atty. Affirm. ¶ 3), defendant argues that he needs the materials sought from Excellus and Univera to identify the possible claims the

---

[1] In support of this motion, defendant submits defense counsel's affirmation (with exhibits, a table listing the categories of documents sought and which motion to dismiss ground they are pertinent to, the proposed subpoenas, and memorandum of law submitted in support of the earlier <u>ex parte</u> application), Docket No. 82, and reply memorandum, Docket No. 84. In opposition, the Government filed its Response in Opposition, Docket No. 83.

Government now alleges in the Indictment were "upcoded" and constituted false claims. Defendant contends that these documents also are necessary for defendant's estoppel contention in his pending motion to dismiss; defendant argues that Univera and Excellus, as Health Care Benefit Programs, were obliged to educated defendant as to acceptable billing practices, that the documents sought will show that Univera and Excellus were aware that defendant was an "outlier" in his billing practices and yet they did nothing to educate him on the appropriate standards. He contends this also goes to defendant's knowledge and fraudulent intent. Third, defendant's vindictiveness claim in his pending motion rests upon the theory that the Government is merely serving as the stalking horse for Excellus in that program's failed battle to get unfettered access to defendant's patient files and Excellus's alleged desire to "get back at" defendant. (Docket No. 82, Def. Memo. at 1-2.)

The Government responds that defendant failed to demonstrate entitlement to issuance of these subpoenas, namely by failing to show the relevance of his requests to any defense he may raise (Docket No. 83, Gov't Response at 1). Defendant's request should be denied because he fails to assert a defense (id. at 4).

Defendant, in reply, argues that his request for these subpoenas arise under his right to compulsory process under the Sixth Amendment (Docket No. 84, Def. Reply at 1). He points to Chief Justice John Marshall's decision in United States v. Burr, 25 F. Cas. 30 (No. 14692D) (C.C.D. Va. 1807), the treason trial of former Vice President Aaron Burr, rather than the unindicted co-conspirator subpoena at issue in United States v. Nixon, 418 U.S. 683 (1974), as being the relevant standard (id.). In Burr, Chief Justice Marshall, as Circuit Justice, held that defendant Burr was entitled to subpoena letters from President Thomas Jefferson as compulsory

process to aid in his defense (id. at 1-2). Defendant concludes that "the message in Burr and subsequent cases enforcing the right to present a defense: the exclusion of defense evidence, the denial of defense access to evidence, is not simply a question of rules of evidence, or rules of procedure, but a question of fundamental constitutional rights" (id. at 4; see id. at 4 n.5 (citing examples of Supreme Court cases)). Defendant denies that he has an obligation to assert a specific defense prior to trial in order to obtain this subpoena (id. at 3) or have to rely upon the Government recognizing that a defense exists before defendant could obtain compelled testimony (see id. at 8). At bottom, defendant seeks to obtain materials that might lead to evidence that shows reasonable doubt and standards of admissibility should not bar their compulsory production (id.).

Defendant next argues that he has not been presented what had actually been submitted to the Health Care Benefit Programs, essentially the false claims at issue in this case (id. at 9). During oral argument, defense counsel explained that while this material was sought in discovery from the Government and some computerized records were produced (see id. at 9-10), the actual items defendant submitted to the programs were not produced. Defendant believes that he submitted HCFA forms and supporting medical records of patients to support the claims. Defendant concludes that any false claim charges would arise from the combination of these documents, while the Government believes that a false claim arose from the filing of allegedly false HCFA forms (regardless of the attachments included). The entities which would have these submissions are the Health Care Benefit Programs, hence defendant seeks subpoenas for these programs to produce these materials. Defendant even questioned if the grand jury reviewed this entire record or some subset.

3

Defendant also seeks documents related to his performance and outreach efforts by the programs (id. at 10). Next, defendant complains that the further production from the Government on defendant's vindictiveness argument, seeking payor correspondence documents, was incomplete, hence defendant needs to seek these items from their source, the programs (id. at 11).

In his conclusion and at oral argument, defendant stressed that the timing of these items is crucial (id. at 12-13). If defendant were to seek these items at the eve of trial, the programs may delay their production and not expedite a trial. He therefore seeks pretrial production by these programs by means of the sought subpoenas.

## DISCUSSION

Federal Rule of Criminal Procedure 17(c) provides

> "a subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them."

Fed. R. Cr. P. 17(c)(1). As previously noted (Docket No. 73, Order at 3-5), this Court has considerable discretion in overseeing the subpoena process, 2 Charles A. Wright, Federal Practice and Procedure § 271, at 218 (Criminal 3d ed. 2000), and the Court must be satisfied that the Rule 17(c) subpoena applied for satisfies the rule, United States v. Nachamie, 91 F. Supp. 2d 552, 561 (S.D.N.Y. 2000). While subpoenas are usually used for compelling production of evidence for a trial, it can be used for compelling production to determine an issue of fact raised in a pretrial motion, see 2 Federal Practice and Procedure, supra, § 271, at 216-17 & n.10. Defendant, as the proponent of the subpoena, bears the burden of showing good cause for

4

production before trial of the subpoenaed items, id. § 274, at 246. The subpoena is the means of effecting compulsory process that is provided for under the Sixth Amendment. That amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor . . . ," U.S. Const. amend. VI.

Rule 17(c), however, is not a means of discovery, see Bowman Dairy v. United States, 341 U.S. 214, 220 (1951); Nixon, supra, 418 U.S. at 698-99, despite the liberalized criminal discovery now allowed under Rule 16, cf. Bowman Dairy, supra, 341 U.S. at 219-20. Rule 17(c) is the criminal equivalent for subpoena practice under Federal Rules of Civil Procedure 45, see Nachamie, supra, 91 F. Supp. 2d at 561 (quoting Adv. Comm. Note, 1944 Adoption, Fed. R. Cr. P. 17), but with the difference that there is a constitutional right at issue in the criminal process and, while subpoenas are frequently used in civil discovery, the criminal rules have not recognized use of this process for third-party discovery in criminal cases. The subpoena is for producing materials for inspection prior to trial, "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials," Nixon, supra, 418 U.S. at 698-99 (emphasis in original)[2]; Nachamie, supra, 91 F. Supp. 2d at 561.

The Supreme Court, in United States v, Nixon, recognized the standard for determining whether a criminal subpoena was unreasonable or oppressive and should be quashed, 418 U.S. at

---

[2]The Court also noted that the rule was intended for complex criminal cases to have the parties produce their respective documentary evidence well in advance of trial, Nixon, supra, 418 U.S. at 699 n.11. Defendant distinguishes Nixon from this case on two grounds, first, that this scope of production may not be limited to just the parties in the criminal proceeding, that the original target of the subpoena in that case was non-party (President Richard Nixon); second, that it was the Government and not defendants seeking the subpoena there, Docket No. 82, Def. Atty. Affirm. ¶ 39 & nn. 1, 2.

698-700; see also Bowman Dairy, supra, 341 U.S. at 220; United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y. 1952) (Weinfeld, J.). In summary, the party seeking production must show relevancy, admissibility, and specificity, Nixon, supra, 418 U.S. at 700, that the documents are evidentiary and relevant, that the materials are not otherwise procurable in advance of trial by the exercise of due diligence, that the party cannot properly prepare for trial without such production and inspection and the failure to obtain inspection may tend unreasonably to delay the trial, and that the application is made in good faith and not intended as a general "fishing expedition," id. at 699-700; see Iozia, supra, 13 F.R.D. at 338. Although Nixon arose from the Government's subpoena of the President (an unindicted co-conspirator and non-party in that prosecution), the Court did not rule on the standard for issuing subpoenas upon non-parties, see also Nixon, supra, 418 U.S. at 699 n.12; Nachamie, supra, 91 F. Supp. 2d at 562.

Judge Scheindlin of the United States District Court for the Southern District of New York applied a different standard for Rule 17(c) defense subpoenas issued upon non-parties. In Nachamie and Tucker, Judge Scheindlin held that a defendant at the eve of trial seeking production "need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond," United States v. Tucker, 249 F.R.D. 58, 66 (S.D.N.Y. 2008); see Nachamie, 91 F. Supp. 2d at 563, with the first element of materiality such that Rule 17(c) subpoenas are not used "as broad discovery devices, but must be reasonably targeted to ensure the production of material evidence," Tucker, supra, 249 F.R.D. at 66. Judge Scheindlin avoided the Nixon standard, in part, due to the inherent asymmetry of investigative resources the defense has as compared with the Government, to uphold defendant's Confrontation Clause rights but without completely overturning that

asymmetry to require equality, id. at 63-64. In upholding the defense subpoena in Tucker, Judge Scheindlin held that defendant's request (made one day before trial) was not a "fishing expedition," but opined that the Government's argument that a similar request made six month before trial may be a fishing expedition, id. at 66.

Defendant in his present motion argues that the Nixon formulation should not apply to a defense application for a subpoena, that the less stringent test applied by Judge Scheindlin is the reasonableness of the request, that the items sought are material to the defense, and the request is not unduly oppressive for the producing party to respond, see Nachamie, supra, 91 F. Supp. 2d at 563; Tucker, supra, 249 F.R.D. at 66, concluding that his application satisfies both tests. Defendant asserts his fundamental Sixth Amendment rights to assert defenses and to seek compulsory process in that defense and raises the question of the applicability of Nixon to the issuance of defense process (Docket No. 82, Def. Memo. at 3-5; Docket No. 84, Def. Reply at 1-3, 7; see Docket No. 82, Def. Atty. Affirm. ¶ 34).

Applying the less stringent standard from Judge Scheindlin's cases that defendant advocates, and upon further consideration of the more comprehensive record on this motion, defendant **has shown** that his subpoena request is reasonable as material to the defense and is not unduly burdensome. To determine the first element, defendant had to show to the Court the connection between his requests and his defense (his argued defenses in his pending motion to dismiss as well as his general defenses, including any showing that leads to reasonable doubt as to his guilt). As for the second element, while potentially voluminous, defendant's requests are targeted to ensure production of material evidence, Tucker, supra, 249 F.R.D. at 66, where the Government has alleged multiple counts of Medicaid fraud arising from numerous medical

7

billings, with each billing supposed supported by extensive medical records and these records in the hands of Univera and Excellus. The items sought are tied to specific assertions in the pending motion (cf. Docket No. 82, Def. Atty. Affirm., Ex. A). At oral argument, defendant offered to tailor his requests further upon stated objections or motions to quash by the programs. Thus, defendant's application for these subpoenas is **granted**. This grant is without prejudice to any claims that Univera or Excellus may have regarding the burdensomeness of responding to these subpoenas and whatever objections or motions to quash that they may raise.

One last issue defendant raises is the timing of this discovery, seeking it well in advance of any trial date (since no date has been set), arguing that he needs this production for his pending motion to dismiss as well as for any trial preparation should his dismissal motion fail. Defendant raises several issues of fact in his pending dismissal motion that might be resolved by production under these subpoenas. Thus, his subpoenas are now timely.

## CONCLUSION

For the reasons stated above, defendant's motion for non-party subpoenas duces tecum to be served upon Univera and Excellus (Docket No. 82) is **granted**.

So Ordered.

/s/ Hugh B. Scott
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      May 29, 2009